1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   CONTEST PROMOTIONS, LLC,                    Case No.  15-cv-00093-SI

              Plaintiff,

8
              v.                               **ORDER GRANTING IN PART
9                                              DEFENDANT'S MOTION TO DISMISS**

10  CITY AND COUNTY OF SAN                      Re: Dkt. No. 15
    FRANCISCO,

11            Defendant.

12

13          Before the Court is a motion to dismiss filed by the defendant City and County of San

14  Francisco ("the City"), seeking dismissal of Contest Promotions, LLC's complaint for failure to

15  state a claim, currently set for argument on April 24, 2015. Pursuant to Civil Local Rule 7-1(b),

16  the Court finds this matter appropriate for resolution without oral argument and hereby

17  VACATES the hearing. For the reasons stated below, the Court GRANTS the City's motion as to

18  Contest Promotions' federal law claims, and DEFERS ruling on its state law claims.

19

20                                      **BACKGROUND**

21          This is the second lawsuit plaintiff has brought against the City to challenge the legality of

22  its signage ordinances. Plaintiff is a corporation that organizes and operates contests and raffles

23  whereby individuals are invited to enter stores for the purpose of filling out an application to enter

24  a contest. Complaint ¶ 6. Plaintiff leases signage space from the store in order to promote its

25  contests to passersby. *Id.* ¶ 7. The business model drives increased foot traffic to the stores, while

26  also promoting the product or event which is the subject of the raffle or contest. *Id.* Plaintiff

27  operates in many cities across the United States including San Francisco, Los Angeles, New York,

28  Seattle, and Houston. *Id.* ¶ 8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     First Law Suit

In early 2007, Contest Promotions approached the City to discuss its business model in light of the City's restriction on certain types of signage. At the time, as is still the case today, the City banned the use of "off-site" signage, known as General Advertising Signs, but permitted "on-site" signage, known as Business Signs. The primary distinction between the two types of signage pertains to where they are located. Broadly speaking, a Business Sign advertises for the business to which it is affixed, while a General Advertising Sign advertises for a third-party product or service which is not sold on the premises to which the sign is affixed.[1]  The quintessential example of an off-site (or General Advertising) sign would be a billboard.

Beginning in late 2007, the City began citing all of Contest Promotions' signs with Notices of Violation ("NOVs"), contending that they were General Advertising Signs in violation of the Planning Code. In all, over 50 NOVs were issued, each ordering that the signage be removed under penalty of potentially thousands of dollars in fines per sign. Complaint ¶¶ 14-15.

In response, on September 22, 2009, Contest Promotions filed its first lawsuit in this Court, challenging -- both facially and as applied -- the constitutionality of the City's ordinance prohibiting its signage. Case No. 09-cv-4434, Docket No. 1. On May 18, 2010, the Court granted in part and denied in part the City's motion to dismiss. Case No. 09-04434, Docket No. 32. In its order, the Court reasoned that Contest Promotions had adequately alleged that the "incidentally" language employed in the ordinance was unduly broad, vague, and could potentially invite unbridled discretion on the part of City officials. *Contest Promotions, LLC v. City & Cnty. of San Francisco*, No. C 09-04434 SI, 2010 WL 1998780 (N.D. Cal. May 18, 2010).  The Court denied defendant's motion as to all of Contest Promotions' First Amendment Claims, but granted with

---

[1] In 2007, a General Advertising Sign was defined under Planning Code § 602.7 as a sign "which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which the sign is located, or to which it is affixed, and which is sold offered or conducted on such premises *only incidentally if at all*.") (emphasis added). A Business Sign was defined under Planning Code § 602.3 as "[a] sign which directs attention to a business, commodity, service, industry, or other activity which is sold, offered, or conducted, *other than incidentally*, on the premises upon which such sign is located, or to which it is affixed." (emphasis added).

United States District Court
Northern District of California

leave to amend as to its Equal Protection claim. *Id.* On February 1, 2013, the parties reached a settlement. The terms of the settlement required the following actions: (1) the City would construe plaintiff's signs as Business Signs, as the Planning Code defined them at the time; (2) Contest Promotions would re-permit its entire inventory of signs to ensure compliance with the Planning Code and the settlement agreement, despite the fact that plaintiff already had previously received permits for these signs; (3) Contest Promotions would dismiss its lawsuit against the City; and (4) Contest Promotions would pay the City $375,000. Complaint ¶¶ 20-23. On July 8, 2014, the City's Board of Supervisors approved the settlement and Contest Promotions made an initial payment of $150,000. *Id.* ¶ 24.

## II.     The Present Lawsuit

Soon after approving the settlement, on July 19, 2014, the Board of Supervisors passed legislation to amend the definition of Business Sign under Planning Code § 602.3. *Id.* ¶¶ 26-28. Section 602.3 now defines a Business Sign as "[a] sign which directs attention to ~~a~~ *the primary* business[2], commodity, service, industry or other activity which is sold, offered, or conducted~~,~~ ~~other than incidentally,~~ on the premises upon which such sign is located, or to which it is affixed." (amendments emphasized). When Contest Promotions submitted its signs for re-permitting pursuant to the Settlement Agreement, the City denied its applications for failure to comply with the Planning Code as amended. Complaint ¶ 32. Plaintiff alleges that the Planning Code was amended "for the specific purpose of targeting Contest Promotions and denying Contest Promotions the benefit of its bargain under the Settlement Agreement and to prevent Contest Promotions from both permitting new signs and obtaining permits for its existing inventory as it is required to do under the Settlement Agreement." *Id.* ¶ 29. The City contends that the ordinance was amended to address the concerns the Court expressed in its 2010 order. Docket No. 15, Def.

---

[2] The section was also amended to clarify that "[t]he primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed." S.F. Planning Code § 602.3.

Mot. at 14.

On January 8, 2015, Contest Promotions filed the present action alleging a number of constitutional[3] and state law claims. Docket No. 1. The Complaint alleges causes of action for (1) violation of the First Amendment, (2) denial of Due Process, (3) inverse condemnation, (4) denial of Equal Protection, (5) breach of contract, (6) breach of implied covenant of good faith and fair dealing, (7) fraud in the inducement, (8) promissory estoppel, and (9) declaratory relief. *Id.* ¶¶ 36-116. On March 13, 2015, the City filed a motion to dismiss the complaint for failure to state a claim. Docket No. 15.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true

---

[3] While not pled as independent causes of action, for every federal constitutional claim, Contest Promotions alleges a violation of the analogous provision of the California Constitution. In its motion, the City does not discuss the viability of these state constitutional claims; therefore, the Court does not consider them for purposes of this motion.

United States District Court
Northern District of California

"allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.     First Amendment

Plaintiff posits two theories for why Section 602.3 violates the First Amendment. First, plaintiff contends that it unconstitutionally abridges plaintiff's right to commercial speech. Complaint ¶¶ 36-47. Second, plaintiff contends that the ordinance invites unbridled discretion by City officials and thus constitutes an unconstitutional prior restraint on speech. Complaint ¶¶ 48-57.

### A.     Commercial Speech

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. States and local governments are bound by this prohibition through the Fourteenth Amendment to the Constitution. *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707 (1931) ("It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action."). Although commercial speech is afforded First

1    Amendment protections, it has a subordinate position to noncommercial forms of expression.

2    *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430 (1993).  Accordingly, it is afforded

3    "somewhat less extensive" protection than is afforded noncommercial speech.  *Zauderer v. Office*

4    *of Disciplinary Counsel*, 471 U.S. 626, 637 (1985); *see also In re Doser*, 412 F.3d 1056, 1063 (9th

5    Cir. 2005).

6    

7            First Amendment protections apply to commercial speech only if the speech concerns a

8    lawful activity and is not misleading.  Once it has been established that the speech is entitled to

9    protection, any government restriction on that speech must satisfy a three-part test: (1) the

10   restriction must seek to further a substantial government interest, (2) the restriction must directly

11   advance the government's interest, and (3) the restriction must reach no further than necessary to

12   accomplish the given objective.  *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447

13   U.S. 557, 563-66 (1980).

14   

15           The City does not contend that plaintiff's signs contain either unlawful or misleading

16   speech. Def. Mot. at 8. Accordingly, the Court presumes that First Amendment protections apply

17   to the commercial speech at issue.  With respect to the first element of the *Central Hudson* test,

18   the Supreme Court has specifically held that the City's interest in enacting the ordinance – to

19   promote traffic safety and aesthetics – is a substantial governmental interest.[4]  *See Metromedia,*

20   *Inc. v. City of San Diego*, 453 U.S. 490, 507-09 (1981); *see also* S.F. Planning Code § 101.  The

21   Supreme Court has also held that ordinances differentiating between on-site and off-site

22   advertisements are directly related to the substantial governmental interests of safety and

23   aesthetics.  *Id.*  Accordingly, the first and second elements of the *Central Hudson* analysis are

27           [4] Plaintiff concedes in its complaint that the City has "a substantial government interest in
28   regulating signage, for the purpose of promoting traffic safety and aesthetics." Complaint ¶ 40.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    satisfied.[5]

2         The third element of the *Central Hudson* analysis – whether the ordinance reaches no

3    further than necessary to achieve its objective – bears the most scrutiny.  The Supreme Court has

4    explained that in order to satisfy this element,

5

6               The Government is not required to employ the least restrictive
                means conceivable, but it must demonstrate narrow tailoring of the
7               challenged regulation to the asserted interest – a fit that is not
                necessarily perfect, but reasonable; that represents not necessarily
8               the single best disposition but one whose scope is in proportion to
                the interest served.

9    *Greater New Orleans Broadcasting Ass'n, Inc. v. U.S.*, 527 U.S. 173, 188 (1999) (internal

10   quotation marks and citation omitted).   In the *Metromedia* case, the Supreme Court suggested that

11   an outright ban on off-site commercial speech is not unduly broad. *Metromedia*, 453 U.S. at 508

12   ("The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped

13   short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite

14   advertising and some other specifically exempted signs.").

15

16        Nonetheless, citing *Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006) and *Lorillard*

17   *Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), plaintiff argues that Section 602.3 violates the final

18   prong of *Central Hudson*. However, as the City correctly points out, these cases are

19   distinguishable because they addressed content-based bans on commercial speech – *Lorillard*

20

21

22   _____

23       [5] "[U]nder Supreme Court precedent, regulations are unconstitutionally underinclusive
     when they contain exceptions that bar one source of a given harm while specifically exempting
24   another[.]" *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 906 (9th Cir. 2009).
     Therefore "a regulation can be unconstitutional if it 'in effect restricts too little speech because its
25   exemptions discriminate on the basis of the signs' messages [or because] [t]hey may diminish the
     credibility of the government's rationale for restricting speech in the first place.'" *Id.* at 904-905
26   (*quoting City of Ladue v. Gilleo,* 512 U.S. 43, 50–51 (1994)). Here, Contest does not argue that
     Section 602.3 is underinclusive.

27

28

United States District Court
Northern District of California

1    concerned restrictions on tobacco advertising, while *Ballen* addressed a ban on portable signs with

2    certain content-based exceptions. As the Court in *Ballen* made clear:

3
              In *Metromedia* the distinction that was challenged and upheld was
4             between onsite and offsite billboards. It was a content-neutral
              distinction. The categorical nature of the ordinance in *Metromedia*
5             precludes its application here. Instead, the inconsistent content-
              based nature with which the Redmond Ordinance distinguishes its
6             interests and the availability of less restrictive alternatives to achieve
              the City's goals are fatal under *Central Hudson's* [final] prong.
7
     *Ballen*, 466 F.3d at 744. Unlike the laws at issue in *Ballen* and *Lorillard*, Section 602.3 is content-
8
     neutral,[6] and its fate is therefore dictated by *Metromedia,* which upheld an outright ban on off-site
9
     advertising.
10
          In *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 912 (9th Cir. 2009), the Ninth
11
     Circuit considered the constitutionality of a law that is substantially similar to Section 602.3.[7]
12
     Citing *Metromedia* fifty-six times, the court upheld the law's constitutionality under the *Central*
13
     *Hudson* test. Section 602.3 is substantially similar to the law at issue in *Metro Lights*; the Court
14
     therefore finds that the same result must follow. Accordingly, the Court GRANTS defendant's
15
     motion to dismiss as to plaintiff's first cause of action for violation of its commercial speech
16
     rights.
17

18

19

20         [6] "A regulation that serves purposes unrelated to the content of expression is deemed
21   neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v.
     Rock Against Racism*, 491 U.S. 781, 791 (1989)
22
           [7] "L.A.M.C. § 91.6205.11, provided that '[s]igns are prohibited if they . . . [a]re off-site
23   signs, except when off-site signs are specifically permitted pursuant to a variance, legally adopted
24   specific plan, supplemental use district or an approved development agreement. This shall also
     apply to alterations or enlargements of legally existing off-site signs.' The L.A.M.C. defines 'Off–
25   Site Sign' as '[a] sign which displays any message directing attention to a business, product,
     service, profession, commodity, activity, event, person, institution or any other commercial
26   message, which is generally conducted, sold, manufactured, produced, offered or occurs elsewhere
     than on the premises where such sign is located.' L.A.M.C. § 91.6203." *Metro Lights* 551 F.3d at
27   901-02.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Prior Restraint**

Section 602.3 defines a Business Sign as a "[a] sign which directs attention to the primary business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises upon which such sign is located, or to which it is affixed." Contest Promotions argues that "the City has not provided clear direction regarding the definition of 'primary.' In using vague standards, the City provided itself unfettered discretion to grant or deny applicants the right to engage in a popular form of free speech." Complaint ¶ 51. Contest Promotions argues that the ordinance's vague standards, coupled with the City's permitting requirement, constitutes an unlawful prior restraint on speech.

To comply with constitutional free speech protections, ordinances governing advertising must contain "adequate standards to guide the official's decision and render it subject to effective judicial review."  *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006). In addressing whether the ordinance at issue here contains sufficient standards to avoid granting City officials unbridled discretion in interpreting the term "primary," each party relies on different Ninth Circuit case law addressing advertising-related ordinances.

Plaintiff cites *Desert Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814 (9th Cir. 1996) for the proposition that an ordinance permitting city officials to make subjective, unguided determinations is unconstitutional.  In *Desert Outdoor Advertising*, the City of Moreno Valley adopted an ordinance restricting any sign deemed "detrimental to the aesthetic quality of the community or the surrounding land uses."  *Id*. at 818.  The ordinance did not provide local officials with any standards or tools to assist in making this determination, and the Ninth Circuit ruled that the ordinance was unconstitutional because it permitted unbridled discretion.

In contrast, the City relies on *G.K. Ltd.* and on *Outdoor Media Group v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007).  In *G.K. Ltd.*, the ordinance in question stated that signs must "be

United States District Court
Northern District of California

1    compatible with other nearby signs, other elements of street and site furniture and with adjacent

2    structures." 436 F.3d at 1082. Although the ordinance also directed officials to consider signs'

3    aesthetic properties, the Ninth Circuit distinguished *Desert Outdoor Advertising* because the

4    ordinance in *G.K. Ltd.* provided objective criteria for city officials to apply. In assessing a sign's

5    "compatibility" with nearby signs, officials were specifically to examine "the relationships of the

6    elements of form, proportion, scale, color, materials, surface treatment, overall sign size and the

7    size and style of lettering." *Id.* The Ninth Circuit determined that the ordinance was sufficiently

8    specific to permit effective review of City decisions, and therefore did not permit unbridled

9    discretion. *Id.* The court also found it important that the ordinance required the city to articulate

10   the reasons for its decision to grant or deny the permit. *Id.* at 1083 (citing *Thomas v. Chicago Park

11   Dist.*, 534 U.S. 316, 324 (2002)).

12

13       In *Outdoor Media Group*, the Ninth Circuit upheld the constitutionality of an ordinance

14   which prohibited off-site signs, defined as "any sign which advertises or informs in any manner

15   businesses, services, goods, persons or events at some location other than that upon which the sign

16   is located," and required all signs to be "compatible with the style or character of existing

17   improvements upon lots adjacent to the site, including incorporating specific visual elements such

18   as type of construction materials, color, or other design detail." 506 F.3d at 904 (quotation marks

19   and alteration omitted). The Ninth Circuit held that city officials' discretion with respect to the

20   off-site prohibition was sufficiently "cabined by specific findings regarding the relationship of the

21   sign to the site, the freeway, and other signs in the area," and that the "compatibility requirement

22   delineate[d] fairly specific criteria regarding the relationship between the sign and the site." *Id.* at

23   904-05.

24

25       Section 602.3 clarifies that "[t]he primary business, commodity, service, industry, or other

26   activity on the premises shall mean *the use which occupies the greatest area on the premises upon*

10

*which the business sign is located, or to which it is affixed*." (emphasis added). Plaintiff contends

that the word "use" renders this definition unconstitutionally vague for two main reasons: (1) it

does not provide adequate guidance for signs which seek to advertise a specific product, (2) it is

unclear "[h]ow closely related [two] products need to be before the sale of the two types of

products is deemed a single 'use'?" Pl. Opp'n at 11. The ordinance addresses the first concern

explicitly, by allowing the lesser of 25 square feet or one-third of a sign to be used for a specific

product.[8] As to the second concern, plaintiff correctly points out that given the diversity of

products sold in San Francisco, enforcement of Section 602.3 will inevitably require some

context-specific determinations.

However, "perfect clarity and precise guidance" are not required, even of regulations

affecting expressive activity. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)  The

definition of "primary" outlined in the ordinance provides objective criteria to cabin the discretion

of City officials, and is certainly no more indeterminate than the laws that passed constitutional

muster in *G.K. Ltd.* and *Outdoor Media Group*. *See G.K. Ltd.* 436 F.3d at 1084 ("Although the

design review criteria are somewhat elastic and require reasonable discretion to be exercised by

the permitting authority, this alone does not make the Sign Code an unconstitutional prior

restraint.); *see also Ward v. Rock Against Racism*, 491 U.S. at 794 ("While these standards are

undoubtedly flexible, and the officials implementing them will exercise considerable discretion,

perfect clarity and precise guidance have never been required even of regulations that restrict

expressive activity."). Furthermore, the City provides a process for administrative appeal and

---

[8] "Where a number of businesses, services, industries, or other activities are conducted on the premises, or a number of commodities, services, or other activities with different brand names or symbols are sold on the premises, up to one-third of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the advertising of one or more of those businesses, commodities, services, industries, or other activities by brand name or symbol as an accessory function of the business sign." S.F. Planning Code § 602.3.

11

United States District Court
Northern District of California

1    judicial review for reconsideration of NOVs or administrative penalties. S.F. Planning Code

2    § 610(d)(1). A hearing must be scheduled within 60 days of a request for reconsideration. *Id.* The

3    administrative law judge must issue a written decision[9] within 30 days of the hearing, and the

4    ordinance provides a non-exhaustive list of criteria that the administrative law judge "shall"

5    consider. *Id.* The availability of prompt administrative review further cabins the discretion of City

6    officials. *See Outdoor Media Group* 506 F.3d at 905 nt.7 ("The Planning Director's discretion was

7    further cabined by provisions explicitly permitting administrative and judicial review of his

8    decision.").

9            Despite plaintiff's reliance on *Desert Outdoor Advertising*, plaintiff cannot seriously

10   contend that Section 602.3 provides "*no limits* on the authority of City officials to deny a permit."

11   *Desert Outdoor Advertising* 103 F.3d at 819 (emphasis added). To the contrary, the City's

12   ordinance provides safeguards commensurate with those of the laws examined and upheld in *G.K.*

13   *Ltd.* and *Outdoor Media Group*. Plaintiff's conclusory allegations of unconstitutionality do

14   nothing to refute this. Accordingly, the Court GRANTS the City's motion to dismiss as to

15   plaintiff's prior restraint claim.

16

17   **II.    Substantive Due Process**

18           Plaintiff alleges the City has violated its substantive due process rights because (1) Section

19   602.3 is "arbitrary and capricious and wholly unrelated to any legitimate governmental interest";

20   (2) the City used "unfettered discretion" in denying plaintiff's permit applications; and (3) the

21   City's denial of permits "infringes on a constitutionally protected property interest." Complaint at

22   ¶¶ 59, 61, 63.

---

[9] The written decision must inform the plaintiff "of its right to seek judicial review pursuant to the timelines set forth in Section 1094.6 of the California Code of Civil Procedure." S.F. Planning Code § 610(d)(1)(B).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The City highlights that plaintiff has merely rehashed the allegations supporting its other constitutional claims -- under the Equal Protection Clause, First Amendment, and Fifth Amendment -- to support a claim for violation of substantive due process. It argues that plaintiff's "substantive due process claim alleges acts that are regulated under more specific requirements of the First Amendment and the Equal Protection Clause" and should therefore be dismissed. Def. Mot. at 12. Plaintiff responds by accusing the City of "[r]elying upon [an] unpublished decision out of the District of Oregon" to support its position. Pl. Opp'n at 11.

However, in addition to the cases cited by the City, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (discussing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Plaintiff's allegations that the City has used "unfettered discretion" and deprived plaintiff of "a constitutionally protected property interest" clearly alleges harms under other constitutional provisions – namely the Fifth Amendment,[10] First Amendment, and Equal Protection Clause. Additionally, plaintiff's conclusory allegation that Section 602.3 is "wholly unrelated to any legitimate governmental interest" is insufficient, standing alone, to state a claim; and moreover, is belied by its allegation that the City "has a substantial government interest in regulating signage, for the purpose of promoting traffic

---

[10] "The Fifth Amendment does not invariably preempt a claim" for violation of substantive due process, *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007), but "[t]o the extent a property owner's complaint [constitutes a Taking] . . . the claim must be analyzed under the Fifth Amendment." *Id.* at 855-56. Here, plaintiff has alleged a violation of the Takings Clause. Complaint ¶ 74.

United States District Court
Northern District of California

1    safety and aesthetics." Complaint ¶ 40. Accordingly, the Court GRANTS defendant's motion to

2    dismiss as to Contest Promotions' substantive due process claim.

3

4

5    **III.    Inverse Condemnation**

6        Contest Promotions invokes the Fifth Amendment's Takings Clause, which states, "nor

7    shall private property be taken for public use, without just compensation." U.S. Const. amend. V,

8    § 4. Plaintiff alleges that the City's refusal to re-permit its signs "depriv[es] Plaintiff of

9    substantially all of the value of its property, constituting a *de facto* taking, without payment or just

10   compensation." Complaint ¶ 74 (emphasis in original).

11       The Supreme Court made the Fifth Amendment's prohibition against uncompensated

12   takings applicable to the states through the Fourteenth Amendment's due process clause in

13   *Chicago, Burlington & Quincy Railroad Co. v. City of Chicago*, 166 U.S. 226 (1897).  There the

14   Supreme Court held that state compensation for government takings must comport with due

15   process of law.  *Id.*  "The Fifth Amendment does not proscribe the taking of property; it proscribes

16   taking without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of

17   Johnson City*, 473 U.S. 172, 194 (1985) (citing *Hodel v. Virginia Surface Mining & Reclamation

18   Assn., Inc.,* 452 U.S., 264, 297, n. 40 (1981)). "[J]ust compensation [need not] be paid in advance

19   of, or contemporaneously with, the taking." *Id.* (internal quotations omitted). If the government

20   has provided an adequate process for obtaining compensation, and if resort to that process

21   "yield[s] just compensation," then the property owner "has no claim against the Government" for

22   a taking. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, n. 21 (1984)*.*

23       Therefore, in order for a takings claim to be ripe for review in a federal court, the plaintiff

24   must have (1) received a "final, definitive position regarding how [the state administrative agency]

25   will apply the regulations at issue to the particular land in question." *Williamson County* 473 U.S.

26

27

28

14

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

at 191; and (2) "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. Here, Contest Promotions has failed to allege that it has availed itself of state procedures to receive just compensation; therefore, its Fifth Amendment claim is unripe.

Contest Promotions makes a number of arguments for why this ripeness requirement should not apply. First, it argues that more recent Supreme Court case law "calls into question the continued vitality of *Williamson County*." Pl. Opp'n at 12. However, contrary to plaintiff's characterization, *Horne v. Dep't of Agric.*, 133 S. Ct. 2053 (2013) in no way questions the vitality of *Williamson County*; to the contrary, it reaffirms is central holding.[11] *Id.* at 2062.

Next, relying on *Yee v. City of Escondido*, 503 U.S. 519 (1992), Contest Promotions contends that *Williamson County* does not apply to facial challenges of constitutionality, so at a minimum, a facial challenge should be allowed to proceed. In *Yee*, the Supreme Court held that because the allegations supporting plaintiffs' takings claim "[did] not depend on the extent to which [they] [were] deprived of the economic use of their particular pieces of property or the extent to which these particular [plaintiffs] [were] compensated" it was ripe for judicial review. 503 U.S. at 534. However, *Yee* only addressed the first prong of the *Williamson County* ripeness test, and is therefore silent on the question of whether a facial challenge may go forward despite having failed to satisfy the second prong. Moreover, unlike in *Yee*, Contest Promotions' takings claim is highly fact specific, and relates to the City's conduct in denying its re-permitting request in light of its previously held permits and the parties' subsequent Settlement Agreement. Complaint ¶ 74. Finally, unlike plaintiff's challenges concerning its First Amendment and due

_____

[11] However, plaintiff is correct that *Horne* did note that the *Williamson County* ripeness requirement is prudential in nature, and "not, strictly speaking, jurisdictional." 133 S. Ct. at 2062.

United States District Court
Northern District of California

1    process causes of action, plaintiff does not plead a facial challenge to Section 602.3; and in any

2    event, in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 544 (2005), the Court made clear that the

3    Takings Clause may not be used as a springboard to launch a facial challenge of a statute for

4    failure to advance a legitimate state interest – which would presumably be the basis of any facial

5    challenge Contest Promotions might make.[12] Accordingly, the Court GRANTS the City's motion

6    to dismiss plaintiffs claim for inverse condemnation/takings, on ripeness grounds.

7

8

9    **IV.    Equal Protection**

10       Plaintiff contends that the City's amendment of Section 602.3 violates the Equal Protection

11   Clause because it was done to specifically target plaintiff and because in denying its permit

12   applications, "the City did not treat other similar applications in this manner." Complaint ¶ 81.

13       Courts afford heightened review to cases in which a classification jeopardizes a

14   fundamental right, or where the government has categorized on the basis of an inherently suspect

15   characteristic.  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Where a fundamental right is not

16   implicated, and no suspect class is identified, a government ordinance or action is reviewed under

17   the rational basis test.  *Id*.  An ordinance satisfies the rational basis test if it is "rationally related to

18   a legitimate state interest."  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).  "[S]trict

19   scrutiny under the Equal Protection Clause is inappropriate where a law regulating speech is

20   content-neutral, even where the speech at issue [is] non-commercial." *Maldonado v. Morales*, 556

21   F.3d 1037, 1048 (9th Cir. 2009). Here, both parties agree that rational basis review applies to

22   plaintiff's equal protection claim. *See Outdoor Media Group* 506 F.3d at 907 (applying rational

23

24

25

26

27       _____

28       [12] Similarly, plaintiff  argues that the ripeness requirement outlined in *Williamson County* does not apply to plaintiffs seeking injunctive relief. Plaintiff  cites no case for this proposition, and the Court declines the invitation to recognize such an exception.

16

United States District Court
Northern District of California

1   basis review to equal protection claim against an ordinance distinguishing between on-site and off-

2   site speech).

3           Contest Promotions does not appear to allege that the distinction between on-site and off-

4   site speech violates the Equal Protection Clause. Indeed, as noted above, the Supreme Court has

5   already determined that a municipality may "distinguish between the relative value of different

6   categories of commercial speech." *Metromedia*, 453 U.S. at 514. Accordingly, "offsite

7   commercial billboards may be prohibited while onsite commercial billboards are permitted." *Id*.

8   at 512. Furthermore, it would make little sense to hold that Section 602.3 survives the heightened

9   scrutiny of the *Central Hudson* test, *see* Section IA. *supra*, yet fails under the much more lenient

10  rational basis review. *See Outdoor Media Group* 506 F.3d at 907 (because the ordinance passed

11  the "more stringent" *Central Hudson* test, it also "satisfies the lower hurdle of rational basis

12  review."); *Reed v. Town of Gilbert, Ariz.*, 707 F.3d 1057, 1076-77 (9th Cir. 2013), *cert. granted*,

13  134 S. Ct. 2900, 189 L. Ed. 2d 854 (2014) ("[Plaintiff's] assertion that the Sign Code violates its

14  right to equal protection of law is basically a revision of its argument that [defendant] cannot treat

15  different types of noncommercial speech differently. Clothed in the garb of equal protection the

16  argument still is not persuasive."); *Paramount Contractors & Developers, Inc. v. City of Los

17  Angeles*, 805 F. Supp. 2d 977, 1003 (C.D. Cal. 2011), *aff'd*, 516 F. App'x 614 (9th Cir. 2013)

18  ("Paramount's equal protection claim fails for reasons similar to those that caused its *Central

19  Hudson* claims to fail."); Rotunda & Nowak, 4 Treatise on Const. L. § 18.40 ("If the [Supreme]

20  Court examines the classification under the First Amendment and finds that the classification does

21  not violate any First Amendment right, the Court is unlikely to invalidate that classification under

22  equal protection principles . . . [I]t has no need to engage in independent equal protection analysis

23  . . . because it has determined that the law does not constitute the improper allocation of a

24  fundamental right.").

17

United States District Court
Northern District of California

1  Plaintiff instead alleges that it has been singled out by the City for disfavored treatment

2  relative to other similarly situated signage permit-applicants – otherwise known as a "class of one"

3  claim. Complaint ¶¶ 81-82. "The Supreme Court has recognized that 'an equal protection claim

4  can in some circumstances be sustained even if the plaintiff has not alleged class-based

5  discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of

6  one.'"" *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Engquist v.

7  Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008)). The Equal Protection clause protects individuals

8  constituting a class of one if the plaintiff demonstrates that there has been irrational and intentional

9  differential treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). "A 'class of

10  one' claim requires a showing that the government '(1) intentionally (2) treated [plaintiffs]

11  differently than other similarly situated [businesses], (3) without a rational basis.'" *Net Connection

12  LLC v. Cnty. of Alameda*, No. C 13-1467 SI, 2013 WL 3200640, at \*4 (N.D. Cal. June 24, 2013)

13  (quoting *Gerhart* 637 F.3d at 1022). "We have recognized that the rational basis prong of a 'class

14  of one' claim turns on whether there is a rational basis for the *distinction,* rather than the

15  underlying government *action.*" *Gerhart* 637 F.3d at 1023 (citing *SeaRiver Maritime Financial

16  Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir.2002)) (emphasis in original).

17  In *Gerhart*, the plaintiff was required to apply for a permit, and was ultimately denied a

18  permit to build an approach to a county road; meanwhile, ten other landowners on his block were

19  allowed to build approaches to the same road without the county even requiring a permit.  Here,

20  by contrast, Contest Promotions has failed to make any non-conclusory allegations tending to

21  show that the City treated it differently than other applicants applying for signage permits. Contest

22  Promotions does not allege that other businesses have received permits to display similar signs;

23  nor does it even allege that its signs are entitled to be permitted as on-site signage as defined by

24  Section 602.3. For this reason, its equal protection claim must fail. *See Summit Media LLC v. City

United States District Court
Northern District of California

*of Los Angeles, CA*, 530 F. Supp. 2d 1084, 1091 (C.D. Cal. 2008) ("[U]nless Plaintiff can plead facts sufficient to show that City actually [acted] with the intent of discriminating against Plaintiff, an amended complaint will not survive the pleading stage."). Accordingly, the Court GRANTS defendant's motion to dismiss Contest Promotions' claim for violation of equal protection.[13]

## V.      State Law Causes of Action

Contest Promotions has filed its suit in a federal forum pursuant to 28 U.S.C. §1331, which provides for federal question jurisdiction. As the litigants to this action are non-diverse, this is the only plausible basis for federal jurisdiction.  In addition to the federal law causes of action discussed above, Contest Promotions has also alleged a number of causes of action based in state law, including (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) fraud in the inducement, and (4) promissory estoppel. Federal courts may take supplemental jurisdiction over such state law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental

---

[13] To the extent plaintiff's equal protection claim is premised on the notion that the City amended Section 602.3 to specifically target its business, it must also fail. First, Section 602.3 is a law of general applicability, and as Contest argues, the amendment of the ordinance, if anything, "broaden[ed] . . . the City's restriction on commercial speech." Pl. Opp'n at 8. Second, under rational basis review, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Therefore the court "'attach[es no] legal significance to the timing' of legislative or municipal action." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004) (quoting *Bannum, Inc. v. City of Fort Lauderdale,* 157 F.3d 819, 822 n. 3 (11th Cir.1998)). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Beach Commc'ns* 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).  The Court expresses no view on whether such a targeting claim might provide more traction with respect to plaintiff's potential state-law and tort claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988).

If all of Contest Promotions' federal claims are dismissed from this action, the Court the Court intends to dismiss the action without prejudice so that a state court may decide the state claims in the first instance.  Accordingly, the Court DEFERS ruling on the City's motion to dismiss as to all of Contest Promotions' state law claims.

At the case management conference, scheduled for April 24, 2015, the Court intends to discuss with the parties the question of whether leave to amend any of plaintiff's federal claims should or must be granted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part the City's motion to dismiss.  At the case management conference on April 24, 2015, the Court will discuss with the parties whether dismissal of Contest Promotions' federal law claims should be with or without prejudice. This order resolves Docket No. 15.

**IT IS SO ORDERED.**

Dated: April 22, 2015

SUSAN ILLSTON
United States District Judge