1   JEFFER MANGELS BUTLER & MITCHELL LLP
    MATTHEW D. HINKS (Bar No. 200750)
2   *mhinks@jmbm.com*
    TALYA GOLDFINGER (Bar No. 294926)
3   *tgoldfinger@jmbm.com*
    1900 Avenue of the Stars, Seventh Floor
4   Los Angeles, California 90067-4308
    Telephone:    (310) 203-8080
5   Facsimile:     (310) 203-0567

6   Attorneys for Plaintiff CONTEST PROMOTIONS, LLC

7

8

9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12

13  CONTEST PROMOTIONS, LLC, a California        CASE NO.   CV 15-00093 SI
    limited liability company,
14                                               **PLAINTIFF'S OPPOSITION TO MOTION
                     Plaintiff,                  TO DISMISS**
15
            v.                                   Hearing Date:       July 31, 2015
16                                               Hearing Judge:      Hon. Susan Illston
    CITY AND COUNTY OF SAN FRANCISCO,            Time:               9:00 am
17  a municipal corporation; and DOES 1 through  Place:              Courtroom 10-19th Floor
    50, inclusive,
18                                               Date Action Filed: January 8, 2015
                     Defendants.                 Trial Date:        Not Set.
19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 12107342v1

# TABLE OF AUTHORITIES

Page(s)

CASES

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996)...................................................................................13

*A Kemp Fisheries Inc. v. Castle & Cookie, Inc.*,
  852 F. 2d 493 (9th Cir. 1988) ...................................................................21

*Anschutz Corp. v. Merrill Lynch and Co., Inc.*,
  785 F. Supp. 2d 799 (N.D. Cal. 2011) ......................................................22

*Arthur L. Sachs, Inc. v. City of Oceanside*,
  151 Cal. App. 3d 315 (1984) .....................................................................23

*Ballen v. City of Redmond*,
  466 F.3d 736 (9th Cir. 2006) .....................................................................11

*Barker v. Riverside County Office of Ed.*,
  584 F.3d 821 (9th Cir. 2009) .................................................................6, 20

*Bateson v. Geisse*,
  857 F.2d 1300 (9th Cir. 1988) ...................................................................15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................5

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ...................................................................24

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) ...................................................................21

*CDF Firefighters v. Maldonado*,
  158 Cal App. 4th 1226 (2008) ...................................................................19

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
  447 U.S. 557 (1980)..................................................................................1, 6

*City of Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993).................................................................................6, 11

*Cohan v. City of Thousand Oaks*,
  30 Cal. App. 4th 547 (1994) ......................................................................16

*Crown Point Development, Inc. v. City of Sun Valley*,
  506 F.3d 851 (9th Cir. 2007) .....................................................................15

JMBM

Jeffer Mangels
Butler & Mitchell LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRINTED ON

RECYCLED PAPER
LA 12107342v1

**TABLE OF AUTHORITIES**
**[CONTINUED]**

Page(s)

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
  920 F.2d 1496 (9th Cir. 1990) ..................................................................................15, 17, 19

*Desert Outdoor Advertising v. City of Moreno Valley*,
  103 F.3d 814 (9th Cir. 1996) ..................................................................................14

*Dickman v. Kimball, Tirey & St. John*,
  LLP, 982 F. Supp. 2d 1157 (S.D. Cal. 2013) ..................................................24

*Doe v. United States Dept. of Justice*,
  753 F. 2d 1092 (D.C. Cir. 1985) ..............................................................................24

*E.H. Morrill Co. v. State*,
  65 Cal. 2d 787 (1967) ................................................................................................23

*Falkowski v. Imation Corp.*,
  309 F. 3d 1123 (9th Cir. 2002) ..............................................................................21

*Florida Outdoor Advertising, L.L.C. v. City of Boynton Beach*,
  182 F. Supp. 2d 1201 (S.D.Fl. 2001) ......................................................................20

*Forsyth County, Georgia v. Nationalist Movement*,
  505 U.S. 123 (1992) ..................................................................................................15

*G.K. Ltd. Travel v. City of Lake Oswego*,
  436 F.3d 1064 (9th Cir. 2006) ..............................................................................14

*Gaudiya Vaishnava Soc'y v. City and County of San Francisco*,
  952 F.2d 1059 (9th Cir.1990) ..................................................................................14

*Greater New Orleans Broadcasting Association, Inc. v. United States*,
  527 U.S. 173 (1999) ....................................................................................................6

*Johnson v. State of California*,
  69 Cal. 2d 782 (1986) ................................................................................................23

*Lazy Y Ranch, Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ..................................................................................19

*Lingle v. Chevron USA, Inc.*,
  544 U.S. 528 540-41 (2005) ......................................................................................15

*Linmark Associates, Inc. v. Willingboro Twp.*,
  431 U.S. 85 (1977) ......................................................................................................11

*Lockary v. Kayfetz*,
  917 F.2d 1150 (9th Cir. 1990) ..............................................................................19

PRINTED ON

RECYCLED PAPER
LA 12107342v1

# TABLE OF AUTHORITIES
## [CONTINUED]

Page(s)

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001)..................................................................................11

*Massey v. Banning Unified School Dist.*
    256 F. Supp. 2d 1090 (C.D. CA 2003) ...................................................24

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..................................................................................16

*Merrifield v. Lockyer,*
    547 F.3d 978 (2008) .................................................................................17

*Metro Lights, LLC v. City of Los Angeles,*
    551 F.3d 898 (9th Cir. 2009) ................................................................6, 7

*Metromedia, Inc. v. City of San Diego,*
    453 U.S. 490 (1981)......................................................................6, 7, 8, 9

*Nat'l Adver. Co. v. City of Orange,*
    861 F.2d 246 (9th Cir. 1988) ....................................................................7

*Oculus Innovative Science, Inc. v. Nofil Corp.,*
    2007 WL 2600746 (N.D. Cal. Sept. 10, 2007) ......................................21

*Outdoor Media Grp., Inc. v. City of Beaumont,*
    506 F.3d 895 (9th Cir. 2007) ..................................................................14

*Paulsen v. CNF Inc.,*
    559 F.3d 1061 (9th Cir. 2009) ................................................................19

*Poway Royal Mobile Owners Ass'n v. City of Poway,*
    149 Cal. App. 4th 1460 (2007) ...............................................................25

*Reed v. Town of Gilbert, Ariz.,*
    135 S. Ct. 2218 (2015)..............................................................1, 8, 12, 13

*Riverisland Cold Storage v. Fresno-Madera Production Credit Union,*
    55 Cal. 4th 1169 (2013)...........................................................................23

*Schrieber Distrib. Co. v. Serv-Well Furniture Co.,*
    806 F. 2d 1393 (9th Cir. 1986) ...............................................................24

*Shuttlesworth v. City of Birmingham,*
    394 U.S. 147 (1969)..................................................................................14

*Sinaloa Lake Owners Assoc. v. City of Simi Valley,*
    882 F.2d 1398 (9th Cir. 1989) .................................................................17

PRINTED ON
RECYCLED PAPER
LA 12107342v1

# TABLE OF AUTHORITIES
## [CONTINUED]

Page(s)

*Sorrell v. IMS Health, Inc.*,
  131 S. Ct. 2653 (2011)....................................................................................13

*United States v. Edge Broadcasting Co.*,
  509 U.S. 418 (1993)..........................................................................................6

*Village of Willowbrook v. Olech*,
  528 U.S. 562 (2000)........................................................................................17

*West v. JPMorgan Chase Bank, NA*,
  214 Cal. App. 4th 780 (2013) .........................................................................22

**STATUTES**

Cal. Gov't Code
  § 818.2..............................................................................................................23
  § 818.4..............................................................................................................23
  § 818.8..............................................................................................................23
  § 65858..............................................................................................................17

Federal Rule of Civil Procedure
  § 8(a)(2) ..............................................................................................................5
  § 12(b)(6) ..........................................................................................................20

San Francisco Municipal Code
  § 306.3..............................................................................................................17
  § 306.4..............................................................................................................17
  § 306.7..............................................................................................................17
  § 306.7(a)..........................................................................................................17
  § 602.3.........................................................................................................*passim*
  § 602.7................................................................................................................8
  § 604..................................................................................................................4
  § 611(a)................................................................................................................8

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12107342v1

I.      **INTRODUCTION**

Plaintiff, Contest Promotions, LLC ("Plaintiff"), brought this action to challenge on First Amendment grounds the City's sign code, which, as alleged in the First Amended Complaint ("FAC"), imposes substantial restrictions upon on-site commercial speech, pursuant to regulations that are content-based on their face, and which neither advance any legitimate governmental interest nor are appropriately tailored to cabin the discretion of permitting and enforcement officials. Plaintiff also challenges on due process grounds the secretive process in which those regulations were enacted on a trumped up "emergency" basis in violation of both local and state law and without notice to Plaintiff or an opportunity to be heard even though the regulations were designed and enacted specifically to deprive Plaintiff of its property.  Plaintiff also challenges on Equal Protection grounds the discriminatory enforcement of those regulations against Plaintiff, which is extensively documented.  Lastly, Plaintiff also brings pendant state law contract and tort claims to seek redress for the City's actions in defrauding Plaintiff into, then breaching, material provisions of a settlement agreement, which, if the City had honored it, should have settled relations between Plaintiff and the City but, instead, spawned this litigation.

The City's Motion to Dismiss those claims is meritless.  The City's challenge to Plaintiff's First Amendment claims fails to appreciate that, while the City's sign regulations now generally prohibit new off-site signs (although those regulations do not, like the City's current on-site regulations, impose restrictions upon the content of existing off-site signs), they also impose broad restrictions upon *on-site* commercial speech of a type that have never before been addressed or sanctioned by courts.  Consequently, because Plaintiff's *Central Hudson* challenge are to those restrictions upon on-site speech – for which the City has failed to even articulate what supposed interest it has in regulating on-site speech in the manner it has chosen – the City's reliance upon case law analyzing bright-line off-site bans is misplaced.  Moreover, as the Supreme Court's recent decision in *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015) held, a regulation is content based where it defines categories of signs on the basis of their message.  *Reed* makes clear that the City's ban on off-site signage as well as its restrictions upon on-site signage are content based and cannot survive a strict scrutiny analysis.  Finally, the City's Motion also ignores the allegations of the FAC

PRINTED ON
RECYCLED PAPER
LA 12107342v1

demonstrating that the newly-amended Section 602.3 of the City's Planning Code is vague and uncertain when applied to a substantial number of businesses in the City meaning that it cannot survive Plaintiff's unbridled discretion challenge.

Similarly, the City's attack upon Plaintiff's Due Process claim is premised upon the false assumption that it merely duplicates the contentions of Plaintiff's First Amendment and Equal Protection claims.  It does not.  Rather, the claim challenges the secretive and illegal process in which the City went about enacting the amended Section 602.3 in violation of state and city law without notice to Plaintiff or an opportunity to be heard.  It also challenges the arbitrary and capricious actions of the City taken in contravention of the law designed to deprive Plaintiff of constitutionally-protected vested rights in its sign permits.  Those allegations are sufficient to allege a claim for deprivation of due process.

The City's challenge to Plaintiff's Equal Protection claim fares no better.  The FAC corrects the deficiencies noted by the Court in its ruling concerning Plaintiff's original complaint and alleges detailed facts showing that Plaintiff is the victim of the City's selective enforcement of Section 602.3, including facts showing that the City does not enforce Section 602.3 against other businesses whose business model is indistinguishable from Plaintiff's for purposes of the application of Section 602.3.  The FAC plainly alleges a valid Equal Protection claim.

Finally, the City's challenges to Plaintiff's state law claims are entirely meritless.  As shown below, those challenges, in large part, are based upon a misconstruction of the parties' settlement agreement.  In addition, the City also chooses to ignore and in other cases mischaracterizes various allegations of the FAC.  In short, the facts alleged in the FAC appropriately allege each and every allegation necessary to support Plaintiff's contract and fraud claims.

For these reasons, Plaintiff respectfully submits that the City's motion should be denied.

## II.    ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

### A.    Plaintiff Contest Promotions

Plaintiff is a sweepstakes and promotions company employing signs to attract customers on behalf of its business partners, helping to promote their businesses by running contests developed to increase store traffic.  [FAC ¶ 12.]  Individuals are invited to enter the business premises for the

PRINTED ON
RECYCLED PAPER
LA 12107342v1

purposes of filling out applications and winning prizes.  [*Id.*]  Plaintiff posts on-site signage, using a part of the businesses' on-site signage allowance, at the locations the contests are operated to encourage the public to enter the premises and participate in the contests.  [*Id.* ¶¶ 12-13.]

### B.     The City's Regulation Of Signage

As alleged in the FAC, Defendant has enacted a series of ordinances regulating the erection and maintenance of signs within the City limits.  [See FAC ¶¶ 16-17, 32-36, 40; *see also* RJN, Exh, A.]   Among other things, the Code regulates on-site signage ("Business Signs") by imposing limitations upon on-site speech that harm small businesses in San Francisco, including Plaintiff and others.  The City defines Business Signs in Planning Code § 602.3[1] as:

> A sign which directs attention to the **primary** business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises upon which such sign is located, or to which it is affixed.

[FAC ¶ 40.]  The term, "primary," as used in the ordinance, is defined as:

> The primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed.

[*Id.*] For all "non-primary" businesses and such, Section 602.3 contains the following limitations:

> Where a number of businesses, services, industries, or other activities are conducted on the premises, or a number of commodities, services, or other activities with different brand names or symbols are sold on the premises, up to one-third of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the advertising of one or more of those businesses, commodities, services, industries, or other activities by brand name or symbol as an accessory function of the business sign, provided that such advertising is integrated with the remainder of the business sign, and provided also that any limits which may be imposed by this Code on the area of individual signs and the area of all signs on the property are not exceeded.

[*Id.*] Off-site signs ("General Advertising Signs") are defined as follows:

> A sign, legally erected prior to the effective date of Section 611 of this Code, which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which sign is located, or

---

[1]  The City's motion describes the changes to Section 602.3 made by the Board of Supervisors on July 29, 2014, but fails to inform the Court that the section was amended again by ordinance on January 26, 2015.  [*See* Plaintiff's RJN, Exh. C.]  The difference between the versions is shown on Attachment A appended to the end of this brief.

PRINTED ON
RECYCLED PAPER
LA 12107342v1

to which it is affixed, and which is sold, offered or conducted on such premises only incidentally if at all.

[FAC ¶ 16.]  Planning Code § 604 requires a person to obtain a sign permit prior to posting signs within the City, including Business Signs.  [RJN, Exh. A.]

### C.    Plaintiff's First Federal Action And Settlement

The current version of Section 602.3 is the result of an amendment passed by the City on a supposedly emergency basis.  [FAC ¶¶ 32-34; *see also* City's RJN, Exh. E.]  That amendment was spawned when the City hatched a plan to evade a settlement agreement and used the opportunity to change its sign code to target Plaintiff and run it out of business.  [FAC ¶¶ 32-36.]

The settlement agreement stemmed from a prior action filed by Plaintiff against the City (the "First Federal Action") alleging that the City's then-existing sign regulations violated the First Amendment.  [FAC ¶ 22.]  Faced with unfavorable rulings the City had suffered in the case, and the substantial prospect of losing, the City elected to settle.  [FAC ¶¶ 24-26.]  Negotiations over a potential settlement lasted several months finally resulting in a negotiated offer that would be presented to the City's Board of Supervisors for approval.  [FAC ¶¶ 26-31.]  Once approved, the City would recognize the legality of Plaintiff' signs under the Planning Code.  [FAC ¶ 26.]  The agreement would also establish various criteria governing Plaintiff's signs and acknowledge that Plaintiff's signs that had been erected in the City would be "deemed Business Signs" and not prohibited General Advertising signs "for all purposes of the Planning Code, including but not limited to the filing, processing and approval of permits by and with the Planning Department . . . ." [FAC ¶ 26.]  As part of the settlement agreement, the City requested and Plaintiff agreed to re-permit its entire inventory of existing signs to ensure that each of Plaintiff's signs would be governed by the criteria established by the settlement agreement, including the newly-established compliance verification requirements.  [FAC ¶ 27.]  Prior to Plaintiff's consenting to allow the negotiated offer to be presented to the Board of Supervisors for approval, City officials made assurances that signs meeting the criteria established by the settlement agreement were legal under the Planning Code and that permits would be issued for the subject signs so long as they satisfied the criteria of the agreement.  [FAC ¶ 150.]  Plaintiff also agreed as part of the settlement agreement

JMBM | Jeffer Mangels
Butler & Mitchell LLP

to pay the City $375,000 based upon the City's representations that the agreement would be a "hard sell" to the Board of Supervisors considering political opposition to outdoor signage in the City, and that the payment would help ensure that the settlement agreement would be approved.  [FAC ¶ 29.][2]

**D.     San Francisco Amends Its Legislation And Refuses To Issue Plaintiff's Permits**

Unbeknownst to Plaintiff, the entire settlement process, as well as the City's efforts to get Plaintiff agree to re-permit was a ruse designed to ensure that Plaintiff would lose its permits for signs it has vested rights to maintain.  Although substantive negotiations had been completed by February 1, 2013, the City did not bring the agreement to the Board for approval for over a year.  [FAC ¶¶ 26, 31.]  Instead, the City used the delay to devise new legislation to ensure that the permits would never be issued.  [FAC ¶ 32-36.]  Suddenly, the City, without forewarning to Plaintiff, approved the settlement in July 2014.  [FAC ¶ 31.]  The next day, the City introduced its amendment to Section 602.3 on a purported emergency basis.  [FAC ¶ 33.]  The City devised and introduced the amendment in secret, without informing Plaintiff.  [FAC ¶ 32.]  Within days, the Board of Supervisors passed the amendment.  [FAC ¶ 34.]  The City now refuses to issue Plaintiff sign permits for its existing signs citing the newly-amended Section 602.3.  [FAC ¶¶ 37-39.]

**III.   ARGUMENT**

**A.     Standard of Review**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and is sufficient if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests."  FRCP 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   The court must accept as true all of the factual allegations set out in the plaintiff's

_____

[2] The FAC also notes that once the terms of the negotiated offer had been finalized, the Court in the First Federal Action issued an order dismissing the case.  [FAC ¶ 30.]  The order also provided that if any party filed a certification within 90 days of the order indicating that the case has not in fact settled, the order shall be vacated and the First Federal Case reinstated for further proceedings.  [*Id.*] The case had not settled within 90 days of the order (the Board of Supervisors had not yet been presented with the agreement for approval).  [*Id.*]  Consequently, Plaintiff filed a certification within 90 days of the order stating that settlement had not occurred.  [*Id.*]  The FAC thus alleges that the First Federal Action is not final and the Court retains jurisdiction to hear and consider the claims alleged in the First Federal Action and ancillary jurisdiction to enforce the Settlement Agreement subsequently reached.  [*Id.*]

complaint, draw inferences from those allegations in light favorable to plaintiff and construe the complaint liberally. *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).

**B.**     **Plaintiff's First Cause Of Action States A Valid First Amendment Claim**

    *1.*     ***The City's Restrictions On On-Site Speech Are Not Justified By Any Governmental Interest***

Plaintiff has adequately alleged a claim for violation of the First Amendment in that the amended Section 602.3 "neither directly advances the City's interests nor is it narrowly tailored to achieve its objectives . . . ."  [FAC ¶ 106.]

There can be no dispute that Plaintiff's signs are entitled to First Amendment protection. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993) (speech that does no more than propose a commercial transaction is protected by the First Amendment).  Thus, the City's restrictions upon commercial speech must satisfy a three-part test established by *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563-66 (1980):  the restrictions must (1) implement a substantial government interest; (2) directly advance the government's interest; and (3) reach no further than necessary to accomplish the given objective.  The City bears the burden of establishing the constitutionality of its regulations under this analysis.  *Greater New Orleans Broadcasting Association, Inc. v. United States*, 527 U.S. 173, 183 (1999).  "The last two steps of the *Central Hudson* analysis basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends."  *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 427-28 (1993).  To satisfy these elements the government, "must demonstrate narrow tailoring of the challenged regulation to the asserted interest", a fit "whose scope is in proportion to the interest served."  *Greater New Orleans,* 527 U.S. at 188.

As alleged in the FAC, Section 602.3 contains broad restrictions on on-site speech that are not narrowly tailored to any legitimate governmental interest.  Those restrictions on on-site speech do not appear in sign codes considered by previous courts.  In both *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) and *Metro Lights, LLC v. City of Los Angeles*, 551 F.3d 898 (9th Cir. 2009), the Courts considered the constitutionality of ordinances that drew bright-line distinctions

PRINTED ON
RECYCLED PAPER
LA 12107342v1

between on- and off-site signage, which contained *no* restrictions upon on-site speech.[3]   Where the Ninth Circuit has considered the issue presented here, it held that bans on off-site commercial signage are valid "except where they relate to activity on the premises on which they are located." *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988).

Unlike the ordinances in *Metromedia* and *Metro Lights*, Section 602.3 restricts on-site speech in substantial ways.  Examples of existing businesses and on-site signage are shown in the FAC and the impacts of Section 602.3 upon their on-site speech are detailed.  [FAC ¶¶ 50-77.] According to the FAC, Section 602.3 divides all business space into two classes for purposes of on-site signage regulations – primary uses and non-primary uses – and restricts the ability of business owners to advertise the latter even though they may be equally or more important to the success of the business.  [FAC ¶¶ 46-49, 54-60, 63.]  Numerous business operate in the City that are dependent upon their ability to use their business space for a variety of uses or to sell a number of different types of good or commodities and to inform the public through on-site signage of the types of goods or services that are offered at their business location.  [FAC ¶¶ 49-54.]  San Francisco presents a complex and challenging competitive environment, and especially so for small retailers or service businesses.  [FAC ¶¶ 49, 55, 57-58, 62.]  These businesses are precisely the kinds of establishments that by necessity must rely primarily on their street signage, "business signs," to bring in trade, and need flexibility and creativity to do so.  [*Id.*]  However, by relegating all non-primary uses, goods and services to second-class status and imposing substantial limits on on-site advertising of non-primary goods and services, the City restricts and interferes with these business owners' speech

---

[3] The Los Angeles ordinance prohibited off-site signage, defined as:

> [a] sign which displays any message directing attention to a business, product, service, profession, commodity, activity, event, person, institution or any other commercial message, which is generally conducted, sold, manufactured, produced, offered or occurs elsewhere than on the premises where such sign is located."

*Metro Lights*, 551 F.3d at 901-02.  The San Diego ordinance prohibited commercial signs but contained an exemption for on-site signs, defined as a sign:

> designating the name of the owner or occupant of the premises upon which such signs are placed, or identifying such premises; or signs advertising goods manufactured or produced or services rendered on the premises upon which such signs are placed.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12107342v1

rights in material and unjustified ways.  [FAC ¶¶ 50-63.]  Businesses that share space at a single location – of which there are numerous in San Francisco – are particularly impacted by Section 602.3 because only one can be the "primary use" at the location and all others have little to no speech rights.  [FAC ¶¶ 64-71.]  Those businesses depicted in the FAC are merely the tip of the iceberg as they and their signs are typical of those established and posted throughout San Francisco. [FAC ¶¶ 49, 54, 57-58, 61, 64-66, 71-72.]

The restrictions upon on-site speech are substantial and material.  Core to private enterprise is the freedom to use a business' legal on-site signage with message, content and design in the manner the proprietor (not the government) deems most calculated to stimulate business.  [FAC ¶¶ 49, 55, 57-58, 62.]  Yet, here, the City has decided for them what messages can be prominently displayed and what messages cannot.[4]  The exception in Section 602.3 that allows small advertising space for non-primary on-site uses is often so limited as to be negligible and effectively meaningless.  [FAC ¶¶ 80-81.]  In other cases, the limitations deprive businesses of the ability to advertise its on-site business altogether.  [FAC ¶ 82.]

Moreover, the City's sign code turns the valuation of "interests" described in *Metromedia* and similar cases on its head because it actually gives ***preference*** to off-site advertising over on-site advertising.  On-site signs are now subject to regulations upon their content under the amended Section 602.3.  Off-site signs, however are not subject to similar limitations.  For "General Advertising" signs – of which, even after a moratorium imposed upon new general advertising signs in 2002 [*see* RJN, Exh. A (Planning Code § 611(a)], there are some 782 in the current inventory— there are ***no*** content limitations, and the owner is able to change the content at will.  [RJN, Exh. A (Planning Code § 602.7).]  A central rationale of the *Metromedia* case – the fountainhead of the case law distinguishing on-site from off-site advertising – is that a city may, consistent with the First Amendment, prefer and advantage on-site over off-site advertising, the latter of which is often positioned next to freeways and major traffic arteries.  *Metromedia*, 453 U.S. at 511-12.  However, there is no similar justification for giving preference to off-site signs in the manner the City has now

---

[4] As such, Section 602.3 is plainly content based under the Supreme Court's recent formulation in *Reed*.  *See* Section II.B.2, *infra*.

PRINTED ON
RECYCLED PAPER
LA 12107342v1

chosen.  *Id.* (a business, like the public, has "a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere."  *Id.* at 511-12.

The City argues that Section 602.3's restriction on non-primary speech "applies only to 'advertising . . . *by brand name or symbol*'" and that, therefore, "the *generic descriptions* of services and products that the primary businesses offer to customers" is permissible.  [Motion at 10:5-10]  Not true; the City has it exactly backwards.[5]  Section 602.3 identifies two classes of descriptions – 1) products and services in general and 2) products and services identified by brand name or symbol:

> Where a number of businesses, services, industries, or other activities are conducted on the premises, *or* a number of commodities, services, or other activities with different brand names or symbols are sold on the premises . . .

It then limits the advertising of those two classes to *only brand names or symbols*:

> . . . up to one-third of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the advertising of one or more of those businesses, commodities, services, industries, or other activities by brand name or symbol as an accessory function of the business sign . . .

Section 602.3 therefore *entirely prohibits* the generic descriptions of non-primary "businesses, services, industries, or other activities [that] are conducted on the premises" and allows only a small amount of advertising space for non-primary "businesses, commodities, services, industries, or other activities *by brand name or symbol*".  The City has articulated no legitimate interest for prohibiting generic descriptions of non-primary business activities.  It has articulated no legitimate interest for preferring advertising by brand name or symbols over generic descriptions.  Nor has it articulated a legitimate interest justifying its preference for "primary" speech (*i.e.*, speech relating to products, services and such that occupy the greatest square footage at the subject premises) over what it deems non-primary.  Each of those content-based distinctions is unconstitutional.

---

[5] Even if the City correctly reads the ordinance, and it does not, the City offers no justification for the content-based distinction of elevating generic descriptions over brand names.  A good example is the Lucky Spot sign.  [FAC ¶ 51.]  There is nothing that makes the branded Western Union portion of the sign any more objectionable than the generic product descriptions.

PRINTED ON

RECYCLED PAPER
LA 12107342v1

The City's arguments concerning businesses that share space also misread the ordinance and how the City applies it.  The City provides three definitions of the term "premises" – 1) a tract of land with multiple buildings; 2) a building; and 3) part of a building – and, apparently, without reference to the text, purpose or history of Section 602.3, adopts the last definition (part of building) arguing that any businesses that share space within a single building will be deemed the primary use at its portion of the shared space.[6]  [Motion at 10:19-11:4.]  But that interpretation effectively reads out of Section 602.3 the concept of "primary" – the essential limitation of Section 602.3.  If adopted, it would mean that *every* business, *every* commodity, *every* industry and *every* activity offered or sold within a single building will be deemed the "primary" use within its part of a building rendering the concept of "primary" meaningless.

The interpretation is also at odds with how the City implements the ordinance.  Plaintiff itself operates within a shared business space conducting contests pursuant to lease agreements in which Plaintiff is permitted to use and occupy a portion of a store's interior space to run contests.  [FAC ¶¶ 12-13.]  According to the City's arguments on this motion, Plaintiff's contests are the "primary" activities taking place within its portion of the stores' interior space and is situated exactly like the Wells Fargo operating within a Safeway store depicted in Paragraph 69 of the FAC.  The City argues that the Wells Fargo sign is permissible because it identifies the business "outside the

---

[6] The effect of the three very different definitions upon the application of Section 602.3 is enormous.  The ordinance gives preference only to the "primary" use at the subject "premises" and, by definition, there can only be one such "primary use".  If "premises" is to be defined as a "tract of land", there can only be one "primary" use at the entire tract.  On the other hand, both a tract of land and a single building can have multiple "primary" uses if the term "premises" means a part of a building.  Notably, the source cited by the City lists the primary definition of "premises" as, "a building and the area of land that it is on" – in other words, a single building (and not part of a building).  *See* "Premise." Merriam-Webster.com. http://merriam-webster.com/dictionary/premise (accessed July 6, 2015).  Likewise, the Random House definition of "premises" does not include only a part of a building.  "Premise." Dictionary.com.  http://dictionary.reference.com /browse/premises (accessed: July 06, 2015).  Black's Law Dictionary also defines "premises" as a whole building: "[a] house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses".  "Premises," Black's Law Dictionary (10th ed. 2014).  The most common definition of the term, therefore, precludes the possibility of having multiple primary uses within a single building.  Section 602.3 does not define the term.

PRINTED ON

RECYCLED PAPER
LA 12107342v1

Jeffer Mangels
Butler & Mitchell LLP

JMBM

area it occupies", yet fails to acknowledge that Plaintiff has been denied permits to erect signs to direct attention to its contests in the exact same circumstances.  [FAC ¶¶ 37-39.]

The City argues that in amending Section 602.3 it "tightened the fit between the ordinance and the City's municipal interests".  [Motion at 10:14-18.]  However, according to the allegations of the FAC, the amendment did just the opposite by imposing substantial restrictions upon on-site speech that did not exist in the previous iteration of the ordinance.  Notably, the City never once attempts to justify the restrictions on on-site speech identified in the FAC by showing how they supposedly promote its asserted interests.  Those restrictions cannot be justified because the City simply cannot dictate consistent with the First Amendment what aspects of their businesses owners can advertise through on-site signage.  As the FAC alleges, while the City in its sign code claims it has special interests in safety, aesthetics and property values, those interests are not promoted by Section 602.3 because a sign depicting a primary use at a location, a sign describing non-primary generic goods and services, and a sign depicting goods and services by brand names or symbols available on-site, can all be equally unappealing and distracting.  [FAC ¶ 83.]  *See Ballen v. City of Redmond*, 466 F.3d 736, 743 (9th Cir. 2006) (regulation more extensive than necessary; no proof that "the exempted signs reduce vehicular and pedestrian safety or besmirch community aesthetics any less than the prohibited signs"); *Discovery Network,* 507 U.S. at 417-18 (rejecting argument City makes here; respondent publishers' newsracks were no greater an eyesore than the newsracks permitted to remain).  ***Perhaps more importantly, the regulations of Section 602.3 do not limit the amount of Business Signage in the City and do nothing more than regulate their content.***  The regulations are unconstitutional.  *Linmark Associates, Inc. v. Willingboro Twp.*, 431 U.S. 85, 93 (1977) (restrictions upon commercial speech not justified by proffered interests); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001) ("The broad sweep" of the sign regulations indicates the government "did not 'carefully calculate[] the costs and benefits associated with the burden on speech imposed by the regulations'").

### 2.    Section 602.3 Is Impermissibly Content Based

The Supreme Court recently – and subsequent to this Court's ruling on the City's previous motion to dismiss -- held that a sign regulation is "content based on its face" when the restrictions

PRINTED ON
RECYCLED PAPER
LA 12107342v1

that apply to any given sign "depend entirely on the communicative content of the sign."  *See Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015).  The city's sign code defined a "Temporary Directional Sign" on the basis of whether it "conveys the message of directing the public to church or some other 'qualifying event'"; "Political Signs" on the basis of whether "a sign's message is 'designed to influence the outcome of an election'"; and "Ideological Signs" on the basis of whether "a sign 'communicat[es] a message or ideas' that d[id] not fit within the Code's other categories." *Id.*  The code subjected each of these categories to different restrictions.  *See id.*

Similarly, here, the City's code defines a "Business Sign" as one that "directs attention to the primary business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises upon which such sign is located," and a "General Advertising Sign" as one, "which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which sign is located . . . and which is sold, offered or conducted on such premises only incidentally if at all".  [RJN, Exh. A (Sections 602.3 and 602.7).]  Within the definition of "Business Sign" the code draws additional distinctions based upon whether the sign's message relates to a "primary" or "accessory" use.  [*Id.*]  These are, as in *Reed*, "message[s] of directing the public" to particular kinds of places, and, as such, are content-based on their face.  The only way a City inspector can determine whether a sign is a permissible Business Sign or whether the message on the sign directs attention to a "primary use" is to examine the sign's content.  The regulations are clearly content-based given the analysis in *Reed*.

The Court in *Reed* rejected the arguments that the city's sign code "was content neutral because the Town 'did not adopt its regulation of speech [based on] disagree[ment] with the message conveyed,' and its justifications for regulating temporary directional signs were 'unrelated to the content of the sign.'"  *Reed*, 135 S. Ct. at 2227.  The Court also rejected the claim that a sign regulation is content neutral if the regulation's content-based distinctions can be "justified without reference to the content of the regulated speech."  *Id.* at 2228.[7]  This kind of analysis, the *Reed*

---

[7] On this ground, this Court's decision on the prior motion to dismiss has been undermined by the *Reed* opinion.  [*See* Dkt #25 at 8, n. 6 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but

JMBM

Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12107342v1

Court held, "skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face." *Id.* "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* "[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.*

Because the City's sign code here imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, "which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest". *Id.* at 2231.   That same form of heightened scrutiny is equally applicable to content-based restrictions upon commercial speech. *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011) ("Act 80 is designed to impose a specific, content-based burden on protected expression. It follows that heightened judicial scrutiny is warranted").  It is therefore the City's "burden to demonstrate that the Code's differentiation" between different types of signs "furthers a compelling governmental interest and is narrowly tailored to that end." *Reed*, 135 S. Ct. at 2231.  The City cannot do so.  As in *Reed,* the City's sign code broadly restricts non-primary signs (including completely banning standalone signs and requiring that any such non-primary messages be integrated with a sign describing a primary use) while at the same time allowing an unlimited number of signs bearing a primary message and imposing no restrictions upon the content of an off-site billboard.   The distinctions do not satisfy the searching inquiry that the strict scrutiny analysis requires.  *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 504-05 (1996) (striking down content-based ban on commercial speech; "a commercial speech regulation may not be sustained if it provides only ineffective or remote support for the government's purpose.").

### 3.   The City's Sign Code Gives The City Unbridled Discretion To Regulate Content

"A law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is

---

not others.")].

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12107342v1

unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150-51 (1969).  The Ninth Circuit has noted that "a law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials."  *Gaudiya Vaishnava Soc'y v. City and County of San Francisco*, 952 F.2d 1059, 1065 (9th Cir.1990) (citing *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755 (1988)).  An ordinance violates the First Amendment "[w]here the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit."  *G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1082 (9th Cir. 2006); *Desert Outdoor Advertising v. City of Moreno Valley,* 103 F.3d 814, 818 (9th Cir. 1996).  "This requirement seeks to 'alleviate the threat of content-based, discriminatory enforcement that arises where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit.'"  *Outdoor Media Grp., Inc. v. City of Beaumont,* 506 F.3d 895, 903-04 (9th Cir. 2007).  Therefore, a regulation must "contain adequate standards to guide the official's decision and render it subject to effective judicial review."  *Id.* at 904.  Three considerations govern:  whether the ordinance (1) contains "reasonably specific" criteria on which a denial may rest; (2) outlines objective factors to consider; and (3) requires officials to "state the reasons for his or her decision to either grant or deny a permit so as to facilitate effective review of the official's determination".  *Desert Outdoor,* 103 F.3d at 818-19.

The FAC properly alleges an "unbridled discretion" challenge under these standards.  In particular, the FAC alleges that Section 602.3 does not provide clear direction as to how a "primary" use is determined.  [FAC ¶ 85.]  "Although the ordinance defines "primary" in terms of the square footage of the uses at a given location, for a great number of businesses operating in the City, the definition is vague and uncertain."  [*Id.*]  The FAC offers specific examples of existing businesses, such as businesses where uses share space or where uses are not separated based upon square footage, in which a "primary" use of a building cannot be ascertained using the City's definition, leaving it to the permitting and enforcement official to determine the "primary" use in their sole discretion.  [FAC ¶¶ 85-87.]  Section 602.3 does not contain "reasonably specific" criteria to guide the determination as to what defines such "uses" where square footage does not and cannot, given the specific businesses in question, supply the answer.  Nor does it contain any "objective factors" to be considered by licensing and enforcement officials to determine the "use" of a particular

PRINTED ON
RECYCLED PAPER
LA 12107342v1

location.  Likewise, Section 602.3 contains no requirement that enforcement or permitting officials state the reasons why a determination is made as to what a particular "use" is deemed to be.

The FAC also alleges that the City has applied the ordinance in inconsistent ways given the lack of clear standards, *e.g.*, by treating the ownership of a multi-tenant building in one instance and the tenants' business operations in other instances as the "primary" use.  [FAC ¶ 86.]  Likewise, the FAC alleges and provides concrete examples of existing businesses in which the concepts of "location" and "premises" in Section 602.3 cannot be ascertained from the text of the ordinance. [FAC ¶ 87.]  Indeed, the City's motion itself, which offers 3 distinct and dramatically different definitions of the term "premises" highlights the vagaries of the ordinance when it is applied.

Given these factual issues, the City's challenge to Plaintiff's FAC must be rejected.  *Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("If the permit scheme involves appraisal of facts , the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship . . . is too great to be permitted").

**C.      Plaintiff Has Alleged Valid Due Process Claims**

The City contends in its Motion that Plaintiff's substantive due process claim covers the same ground as the First Amendment and Equal Protection claims and therefore is subsumed by the more specific protections of the First and Fourteenth Amendments.  The City is incorrect.

Land use actions that deprive a person of property interests run afoul of substantive due process rights where those actions do not substantially advance legitimate government interests. *See Lingle v. Chevron USA, Inc.*, 544 U.S. 528 540-41 (2005).  A plaintiff makes out a claim for violation of substantive due process where it alleges that "arbitrary and irrational" government conduct has deprived it of its property.  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990); *see also Bateson v. Geisse*, 857 F.2d 1300, 1303-04 (9th Cir. 1988) (affirming judgment against city for arbitrarily withholding building permit); *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 854-56 (9th Cir. 2007) (reversing dismissal of substantive due process claim alleging arbitrary and irrational denial of a permit application).

The FAC here alleges that the City "acted in an arbitrary and capricious manner to deny Plaintiff re-permits for its signs . . . without any legitimate purpose and with no evidence before it to

PRINTED ON
RECYCLED PAPER
LA 12107342v1

support its actions."  [FAC ¶ 120.]   The substantive due process claim also incorporates the additional allegations of the FAC alleging that:  (1) Plaintiff holds valid permits for existing signs; (2) the City defrauded Plaintiff into agreeing to re-permit its inventory as part of the settlement agreement; (3) the City delayed approval of the settlement agreement while it secretly devised new legislation to ensure that it would never issue those permits; and (4) without notice to Plaintiff the City suddenly approved the settlement agreement and enacted the new legislation immediately thereafter before Plaintiff could apply for and obtain new permits.  [FAC ¶¶ 5, 18, 26-39.]  Thus, the substantive due process claim does not tread the same ground as the First Amendment or Equal Protection claims but is instead grounded upon the City's arbitrary and irrational actions in depriving Plaintiff of its existing permits and sign inventory.  Those allegations state a due process claim under the authorities described above.

So too does Plaintiff allege a valid procedural due process claim by depriving Plaintiff of its property without notice to Plaintiff or an opportunity to be heard.  The City's argument that due process principles are not applicable to legislative actions misses the point.  Plaintiff's contention here is that it has been deprived of its property rights, yet has been has been afforded *no* hearing. "[S]ome form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.*  These principles extend to the zoning context.  *See, e.g.*, *Cohan v. City of Thousand Oaks*, 30 Cal. App. 4th 547, 554-55 (1994).  The *Cohan* court upheld a claim of denial of due process where the city violated both state and local law, failed to provide adequate notice and failed to provide a meaningful hearing before it denied plaintiff's land use application.  *See id.* at 555-60.

As alleged in the FAC, Plaintiff here has been deprived of its vested sign permits without an opportunity for a single hearing before the City.  [FAC ¶ 121.]  The City suggests in its motion that Plaintiff can appeal the City's determination not to issue new permits for its existing signs.  [Motion at 12:6-15.]  In the same breath, however, it admits that any such hearing would be futile [Motion at 12:8-11] as the City has already amended its sign code and the basis for the City's rejection of Plaintiff's permits is the newly-amended definition of Business Signs.  [FAC ¶¶  32-39.]

PRINTED ON
RECYCLED PAPER
LA 12107342v1

Moreover, as in *Cohan*, the City accomplished its purposes by violating both California and City laws designed to ensure that citizens have notice and an opportunity to be heard before being deprived of their property.  Amendments to the Planning Code can only be made by adhering to proper procedures, including giving notice to affected property owners and to the public (Planning Code § 306.3) and a hearing before the Planning Commission (§ 306.4).  The City, however, bypassed these requirements by couching its action as an interim zoning control under Planning Code § 306.7.  [City's RJN (Dkt #16), Exh. E.]  But that section can only be employed, "to suspend temporarily the processing of certain applications for demolition permits, building permits and other land use authorizations".  [RJN, Exh. B (Planning Code § 306.7(a).]  The City here did not take any of those actions; rather, it amended the Planning Code by changing the definition of a Business Sign.  Couched in terms of a fictional urgency, the City jettisoned standard hearing procedures ordinarily required that would have put into the open the duplicity of the City at its highest level negotiating and agreeing to signage that the resolution would prevent.  In addition, under California law, interim zoning moratoria may only be effective for 45 days (Cal. Gov't Code § 65858), and here the City's interim controls were enacted for a 180-day period.  [City's RJN, Exh. E.]

These allegations create a factual issue, which cannot be adjudicated on a pleadings motion. *See Del Monte Dunes*, 920 F.2d at 1508 ("where a property owner contends that it has been unconstitutionally deprived of property through governmental regulation, motions to dismiss . . . must be viewed with particular skepticism" because "[t]he importance of the specific facts and circumstances relating to the property and the facts and circumstances relating to the government action militate against summary resolution in most cases").

**D.    Plaintiff Has Properly Alleged Facts Supporting a Denial of Equal Protection**

Malicious, irrational or plainly arbitrary governmental conduct is actionable under the Equal Protection Clause.  *See Sinaloa Lake Owners Assoc. v. City of Simi Valley,* 882 F.2d 1398, 1409 (9th Cir. 1989).  A law fails to survive rational basis review where it is not "rationally related to a legitimate state interest."  *Merrifield v. Lockyer*, 547 F.3d 978, 984 n.9 (2008).  Moreover, a plaintiff may bring an equal protection claim as a "class of one" and assert that the City treated it differently than similarly-situated entities without a rational basis for that treatment.  *Village of*

PRINTED ON
RECYCLED PAPER
LA 12107342v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

*Willowbrook v. Olech*, 528 U.S. 562 (2000) (equal protection claim valid even though plaintiff was not part of a recognized protected class).

In its ruling on the City's motion to dismiss Plaintiff's original complaint, the Court determined that the allegations of discriminatory and selective treatment were too conclusory to show that the City treated Plaintiff differently than other sign permits applicants. The FAC corrects that deficiency to, not only allege specifically that the City is selectively enforcing Section 602.3 against Plaintiff [FAC ¶¶ 88-89], but also to provide specific and concrete examples of the City approving sign permit applications that do not comply with the new ordinance. [FAC ¶¶ 90-98]. The FAC also alleges that the examples are provided for illustration only and that the City has approved additional non-complying signs and is continuing to do so. [FAC ¶ 99.] The FAC goes on to allege, based upon documentary evidence, that:

> [D]espite discovery that has taken place to date, Plaintiff is aware of only a single business that has been denied the ability to obtain a sign permit as result of the amended Section 602.3 – Plaintiff itself. In all instances known to Plaintiff in which the City was presented with a permit application for a sign that did not meet the amended definition of a Business Sign under Section 602.3 (but was permissible under the prior version of the ordinance), the City has ignored the limitations of the amended ordinance and issued the requested permit. [FAC ¶ 88.]

The City itself concedes that several of the locations described by Plaintiff may have been illegally permitted[8] but nevertheless argues that Plaintiff has not identified sign applicants similarly situated to itself to substantiate the allegations of selective enforcement. The City is incorrect. In each of the instances described in the FAC, the subject signs are not allowable under Section 602.3, the very same ordinance the City is now using to deny Plaintiff's permit applications. Indeed, the sign applicants at 345 Stockton Street and 490 Geary Street are exactly situated as Plaintiff. At each of those locations, the City issued sign permits for non-primary uses within a building housing

---

[8] As to the others, the City falsely contends the signs comply with the new ordinance. They do not. Four of the five the City attempts to justify are businesses occupying a single building. The City's argument that they comply is based upon the erroneous contention that a single building may house multiple "primary" uses. As noted, above, there is no support for the argument. As to the final sign, the City tries to contradict the allegations of the FAC and argues that a pharmacy sign is justified because the primary use of the location is a pharmacy. The FAC, however, plainly alleges that the primary use of the subject premises is a retail store because the store's retail operations occupy the greatest square foot of the premises. [FAC ¶ 91.]

PRINTED ON
RECYCLED PAPER
LA 12107342v1

Jeffer Mangels
Butler & Mitchell LLP

JMBM

a much larger use (lounge versus hotel). [FAC ¶¶ 90, 92.] But just like the lounge in each situation, Plaintiff also operates on-site within a building housing a larger use pursuant to a lease yet the City has denied Plaintiff's permits. [FAC ¶¶ 12-13.] The City's arguments that the former are permissible, proves that Plaintiff is being discriminated against.

Finally, whether there is a rational basis for the challenged regulation is a question of fact, inappropriate for a motion to dismiss. *See Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990); *Del Monte Dunes*, 920 F.2d at 1508 (19990). The Ninth Circuit "allow[s] plaintiffs to rebut the facts underlying the defendants' asserted rationale for a classification, to show that the challenged classification could not reasonably be viewed to further the asserted purpose." *Lazy Y Ranch, Ltd. v. Behrens*, 546 F.3d 580, 590-91 (9th Cir. 2008). Further, "in an equal protection claim based on selective enforcement of the law, a plaintiff can show that defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Id.* at 592 (quoting *Enquist v. Or. Dep't of Agric.*, 478 F.3d 985, 993 (9th Cir. 2007)). Given the allegations of the City's selective enforcement, Plaintiff is entitled to present facts as to whether the City's alleged rational basis is simply a pretext and otherwise challenge the City's proffered justifications for its regulations.

**E.      The City Misinterprets The Allegations Of Breach In The FAC; Plaintiff Has Adequately Alleged A Claim For Breach Of Contract**

Plaintiff has adequately pled a breach of contract claim, the elements of which are: (1) the existence of the contract; (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to plaintiffs as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal App. 4th 1226, 1239 (2008); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (Court applies the choice of law rules of the forum state).

Plaintiff alleges each of these elements: (1) a valid contract [FAC ¶139]; (2) Plaintiff's performance [FAC ¶¶ 31, 37, 140]; (3) the City's breach by, among other things intentionally preventing Plaintiff from obtaining new permits for its existing signs even though the settlement agreement required the City to issue the permits so long as the existing signs complied with the specifications of the agreement [FAC ¶¶ 36, 141-42]; and (4) damages caused by the breach,

PRINTED ON
RECYCLED PAPER
LA 12107342v1

including the loss of its entire inventory of permitted signs and the hundreds of thousands of dollars in payments made to the City.  [FAC ¶¶ 36, 143.]

The City's argument relies solely upon a misrepresentation of the allegations of the FAC – namely, that Plaintiff's breach of contract claim is based upon the contention that the settlement agreement prohibits the City from amending its laws.  Given that false premise, the City argues that it cannot be liable for a breach of contract because the agreement allows amendments and because such a covenant would be void as against public policy.  Those contentions are a pure straw man.  The breach alleged in the FAC lies in the City's refusal to process valid permit applications.  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all of the factual allegations set out in the plaintiff's complaint.  *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).  As alleged, the City deprived Plaintiff the benefit of its bargain in the settlement agreement when it required Plaintiff to re-permit its existing inventory of signs, signs for which Plaintiff already held valid permits, and then, just days after the agreement was approved by the City and signed by the mayor, the City amended the Planning Code and refused to issue permits for Plaintiff' existing inventory.  [FAC ¶¶ 32-36.]

Moreover, the FAC presents a factual issue as to whether the City was required to issue permits for Plaintiff's existing sign inventory after amending the Planning Code.  Plaintiff has always held permits for its existing signs.  [FAC ¶ 28.]  In issuing the permits, according to the settlement agreement, the City determined that the subject signs "comply with all applicable provisions of the city's Charter, ordinances, administrative bulletins, and other written regulations in effect at the time the permit for the subject sign is issued."  Further, Plaintiff has a vested right to have its new permit applications reviewed based upon the law in existence at the time the original permit applications were submitted and approved.  *See, e.g.*, *Florida Outdoor Advertising, L.L.C. v. City of Boynton Beach,* 182 F. Supp. 2d 1201, 1213 (S.D.Fl. 2001).

In addition, the FAC alleges that the intent of the parties in entering into the agreement was to require the City to issue permits for Plaintiff's pre-existing inventory so long as the permit applications satisfied the standards expressed in the agreement and that, to the extent the agreement can be read to provide otherwise, it is ambiguous and subject to clarification through parol

evidence.[9]  [FAC ¶ 142.]  Although the City contends otherwise, such factual disputes may not be resolved on a motion to dismiss.  *See Falkowski v. Imation Corp.*, 309 F. 3d 1123, 1131 (9th Cir. 2002) (reversing dismissal of contract claims where ruling required interpretation of ambiguous contract); *A Kemp Fisheries Inc. v. Castle & Cookie, Inc.*, 852 F. 2d 493, 496 (9th Cir. 1988) ("court may not dismiss on the pleading when one party claims that extrinsic evidence renders the contract ambiguous").

### F.     Plaintiff Has Adequately Alleged A Claim For Breach Of Implied Covenants

Plaintiff has adequately alleged a claim for breach of the covenant of good faith and fair dealing.  The elements are:  (1) the existence of a contract; (2) plaintiff's performance or excuse of nonperformance; (3) all conditions required for defendant's performance occurred; (4) unfair interference with plaintiff's right to receive the benefits of the contract; and (5) damages.  *Oculus Innovative Science, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007); *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (plaintiff must show "the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities.").

The FAC alleges that Plaintiff had a valid, binding contract with the City in the settlement agreement [FAC ¶145], and that it performed under the agreement, except for those obligations that have been excused.  [FAC ¶¶ 31, 37, 146].  The FAC further alleges that the City enacted legislation which was designed to deny Plaintiff the benefit of its bargain and to prevent Plaintiff from both permitting new signs and obtaining permits for its existing inventory as it is required to do under the agreement.  [FAC ¶ 35.]  The FAC also alleges that the City acted in bad faith by extracting a covenant from Plaintiff to require it to re-permit its current inventory under the terms of the agreement, and then, just days after the agreement became effective, taking action to prevent

---

[9] Plaintiff has always held permits for its existing signs and only agreed to obtain new permits for existing signs at the City's request because the City desired to clarify its own records.  The provision in the Settlement Agreement relied upon by the City, which states that Plaintiff's signs must comply with the City's ordinances and laws in effect at the time the permit for the subject sign is issued does not defeat Plaintiff's breach of contract claim in respect to existing signs since the signs in fact complied with the City's ordinances at the time Plaintiff received its permits.

PRINTED ON
RECYCLED PAPER
LA 12107342v1

Plaintiff from doing so.  [FAC, ¶¶ 36, 147.]  Lastly, Plaintiff alleges that it suffered damages as a result of the City's breach.  [FAC ¶¶ 36, 148.]

The City cannot rely upon its right to change its own laws to shield itself from liability. While the City may not be prevented from amending its laws by operation of the settlement agreement, by the same token, the mere fact that Plaintiff's damages arise from a change in the law does not insulate the City from liability under the parties' agreement.  Moreover, at the very least, a disputed issue of fact exists regarding whether the City was required under the settlement agreement to re-issue permits for Plaintiff's existing sign inventory.

### G.   Plaintiff Has Alleged A Valid Fraud Claim

#### 1.   *Plaintiff Justifiably Relied Upon The City's Misrepresentations*

The City erroneously claims that Plaintiff could not have justifiably relied upon its representations.  However, "[r]easonableness of reliance on a misrepresentation is ordinarily a question of fact.  Whether reliance was justified in a particular circumstance may only be decided as a matter of law if reasonable minds can come to only conclusion based on the facts." *Anschutz Corp. v. Merrill Lynch and Co., Inc.*, 785 F. Supp. 2d 799, 825 (N.D. Cal. 2011) (J. Illston) (denying motion to dismiss); *West v. JPMorgan Chase Bank, NA*, 214 Cal. App. 4th 780, 794 (2013) (reversing demurrer on fraud claim; justifiable reliance is a question of fact).

The City argues that the settlement agreement "expressly contradicts and repudiates any alleged promise to re-permit all of Plaintiff' existing signs."  Presumably, this argument is referring to the requirement under the agreement that Plaintiff signs comply with the Planning Code, but this requirement is entirely consistent with Plaintiff's claim of fraud.  As alleged, the City represented to Plaintiff that its current inventory of signs were lawful under the Code, and that they would therefore be re-permitted in accordance with the agreement.  [FAC ¶ 150.]  Thus, as represented to Plaintiff, the re-permitting was a mere formality.  The City's statements, which the FAC alleges were false when made, are thus not contrary to the settlement agreement.

Moreover, the City argues that its Charter requires any settlement of litigation to be approved by the Board of Supervisors and the Mayor.  It is unclear why this fact, even if true, should have any effect on Plaintiff's fraud claim or undercut Plaintiff's right to rely upon the

PRINTED ON
RECYCLED PAPER
LA 12107342v1

representations made by the City's Planning Department, the very people charged under the Municipal Code with considering sign permit applications and administrating the City's sign code. The City also claims that Plaintiff was represented by counsel during the negotiations over the settlement agreement. The City, however, offers no argument why this would preclude Plaintiff from justifiably relying on the City's representations.

Lastly, the City asserts that the integration clause in the settlement agreement precludes a fraud claim. The City is wrong and its argument is directly contradicted by the California Supreme Court's opinion in *Riverisland Cold Storage v. Fresno-Madera Production Credit Union*, 55 Cal. 4th 1169 (2013), which held that an integration clause is no defense to a fraud claim.

### 2. The City Is Not Immune From Plaintiff's Fraudulent Inducement Claim

Second, the City argues, incorrectly, that it is immune from liability, an argument which, once again, distorts the allegations of the FAC. Plaintiff alleges that the City is liable because the City itself misrepresented that Plaintiff's signs were lawful under the Planning Code and would be re-permitted. [FAC ¶ 150.] Plaintiff does not allege that the City is liable under tort for enacting legislation or denying a permit. *See* Gov. Code §§ 818.2, 818.4, 818.8. Therefore, none of these immunities apply. Moreover, governmental immunity under Gov. Code § 818.8 is not appropriate where, as here, the action lies in contract, *i.e.* inducement into the settlement agreement. *See Arthur L. Sachs, Inc. v. City of Oceanside*, 151 Cal. App. 3d 315, 323 (1984) (government immunity under Gov. Code § 818.8 does not apply where the misrepresentations alleged were made to induce plaintiff to enter contract); *E.H. Morrill Co. v. State*, 65 Cal. 2d 787, 794 (1967) (reversing demurrer where government immunity under Gov. Code § 818.8 did not apply because claim was based in contract). Lastly, Gov. Code § 818.8 only applies to a "policy decision" whereby the City must show it was "consciously balancing risks and advantages." *Johnson v. State of California*, 69 Cal. 2d 782, fn. 8 (1986). The City has not and cannot show that the misrepresentations it made were part of a conscious policy and not an attempt to induce Plaintiff to enter into the agreement.

The City's arguments with respect to the remedies are irrelevant. Even if the remedies Plaintiff seeks are improper (they are not), this deficiency is not a proper basis for a motion to dismiss. "[I]t need not appear that the plaintiff can obtain the *specific* relief demanded as long as

PRINTED ON
RECYCLED PAPER
LA 12107342v1

the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F. 2d 1092, 1104 (D.C. Cir. 1985) (emphasis in original); *Massey v. Banning Unified School Dist.* 256 F. Supp. 2d 1090, 1092 (C.D. CA 2003).

### 3. *Plaintiff Has Sufficiently Pleaded Fraudulent Inducement*

Third, the City also argues that Plaintiff has not met the pleading requirements with specificity.  However, the City does not, and cannot, identify which allegations it claims are supposedly missing from the FAC.  The allegations in the FAC are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001); *see also Dickman v. Kimball, Tirey & St. John*, LLP, 982 F. Supp. 2d 1157, 1165 (S.D. Cal. 2013) (plaintiff pled fraud with sufficient particularity to survive defendant's motion to dismiss).  Moreover, unlike in the cases cited in the motion,[10] the FAC specifically alleges what the fraudulent representations were, when they were made, in what context they were made, and who made them. [FAC ¶¶ 28, 150.]  The FAC also sets forth why these representations were false – *i.e.*, the City never intended to honor its representations. [FAC ¶ 152.]  Accordingly, the motion should be denied as Plaintiff has more than sufficiently pleaded the fraudulent inducement claim.

### H. <u>Plaintiff Has Adequately Pleaded A Claim For Promissory Estoppel</u>

The City lays out the pleading requirements for a promissory estoppel claim in its Motion. Plaintiff alleges all of these elements:  (1) a clear promise (FAC ¶ 158); (2) reasonable reliance (FAC ¶ 160); (3) the reliance was foreseeable (FAC ¶ 159); and (4) resulting injury (FAC ¶ 162).  It is unclear which element of these requirements, if any, the City claims is not sufficiently pleaded. The City's sole argument with respect to this cause of action is that the promise alleged in the FAC was unauthorized because a settlement agreement had to be approved by the Board of Supervisors and the Mayor.  This argument is invalid for several reasons.

---

[10]   The case cited by the City, *Schrieber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F. 2d 1393 (9th Cir. 1986), found that, even though fraud was not pleaded with sufficient particularity, it was an abuse of discretion for the district court to grant a motion to dismiss on this basis.

PRINTED ON
RECYCLED PAPER
LA 12107342v1

Even if the City can rely upon extrinsic facts, as it does here, they have no relevance. The section of the charter cited by the City concerns the obligations of the city attorney to make recommendations of settlement, not the obligations of the city in enacting a settlement. Nothing in the charter precludes an authorized promise not memorialized in the settlement agreement and, as explained above, this ambiguity is enough to overcome a motion to dismiss.

Moreover, and once again, the City relies upon a misstatement of the allegations of the FAC. The FAC alleges that the City made statements that it believed Plaintiff's signs were lawful under the Planning Code and would be re-permitted and that, based on these allegations, Plaintiff entered into the settlement agreement. [FAC ¶¶ 158-160.] The promissory estoppel alleged is therefore not based on specific terms of the settlement agreement, which the City claims would have needed to be approved, but rather it is based upon the promises made causing Plaintiff to enter into the agreement in the first place. In this way, the present facts are unlike those in the lone case cited by the City, *Poway Royal Mobile Owners Ass'n v. City of Poway*, 149 Cal. App. 4th 1460 (2007). In *Poway*, the court found that the promissory estoppel argument was in essence a breach of contract argument and that the contract alleged would have needed to be in writing. *Id.* at 1472. Plaintiff's promissory estoppel theory is distinct from its breach of contract cause of action. The City confuses the settlement agreement, which may have needed to be approved, with the promises the City made before the execution of the settlement agreement, which definitely did not.

## I.     **Plaintiff's Claim For Declaratory Relief Is Adequately Alleged**

Finally, the City argues that Plaintiff's declaratory relief claim should be dismissed because, it asserts, all of Plaintiff's substantive claims are defective. As set forth above, the City is wrong. Plaintiff has pleaded valid claims against the City. Thus, for the same reasons, Plaintiff's declaratory relief claim is also valid.

## IV.     **CONCLUSION**

Plaintiff respectfully submits that the City's motion to dismiss should be denied.

DATED:  July 10, 2015                    JEFFER MANGELS BUTLER & MITCHELL LLP

By:   /s/ Matthew D. Hinks
                                                    MATTHEW D. HINKS
                                        Attorneys for Plaintiff CONTEST PROMOTIONS, LLC

PRINTED ON
RECYCLED PAPER
LA 12107342v1

**ATTACHMENT A**

Current Definition of "Business Sign" in Section 602.3 (emphasis added):

A sign which directs attention to the primary business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises upon which such sign is located, or to which it is affixed. Where a number of businesses, services, industries, or other activities are conducted on the premises, or a number of commodities, services, or other activities with different brand names or symbols are sold on the premises, up to one-third of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the advertising of one or more of those businesses, commodities, services, industries, or other activities by brand name or symbol as an accessory function of the business sign, provided that such advertising is integrated with the remainder of the business sign, and provided also that any limits which may be imposed by this Code on the area of individual signs and the area of all signs on the property are not exceeded. The primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed.

Definition of "Business Sign" discussed in City's Motion:

A sign which directs attention to the primary business, commodity, service, industry or other activity which is sold, offered, or conducted on the premises upon which such sign is located, or to which it is affixed. Where a number of businesses, services, industries, or other activities are conducted on the premises, or a number of commodities are sold on the premises, up to 1/3 of the area of a business sign, or 25 square feet of sign area, whichever is the lesser, may be devoted to the advertising of one or more of those businesses, commodities, services, industries, or other activities by brand name or symbol as an accessory function of the business sign, provided that such advertising is integrated with the remainder of the business sign, and provided also that any limits which may be imposed by this Code on the area of individual signs and the area of all signs on the property are not exceeded. The primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed.