1

2

3                    UNITED STATES DISTRICT COURT

4                  NORTHERN DISTRICT OF CALIFORNIA

5

6    CONTEST PROMOTIONS, LLC,                Case No.   15-cv-00093-SI

7                 Plaintiff,

8           v.                              **ORDER GRANTING MOTION TO
                                            DISMISS AND DENYING MOTION TO
9    CITY AND COUNTY OF SAN                 SEAL**
     FRANCISCO,
10                                          Re: Dkt. No. 33, 34, 35
                 Defendant.

11

12          A motion to dismiss filed by the defendant City and County of San Francisco ("the City"),

13   seeking dismissal of plaintiff Contest Promotions, LLC's first amended complaint ("FAC") for

14   failure to state a claim, is currently set for argument on July 31, 2015. Pursuant to Civil Local Rule

15   7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby

16   **VACATES** the hearing. For the reasons stated below, the Court **GRANTS** the City's motion as to

17   Contest Promotions' federal law claims *with prejudice*, and **DISMISSES** plaintiff's state law

18   claims *without prejudice*.

19

20                              **BACKGROUND**

21          This is the second lawsuit plaintiff has brought against the City to challenge the legality of

22   its signage ordinances. Plaintiff is a corporation that organizes and operates contests and raffles

23   whereby individuals are invited to enter stores for the purpose of filling out an application to enter

24   a contest. FAC ¶ 12. Plaintiff leases signage space from the stores in order to promote its contests

25   to passersby. *Id.* ¶ 13. The business model drives increased foot traffic to the stores, while also

26   promoting the product or event which is the subject of the raffle or contest. *Id* ¶ 12. Plaintiff

27   operates in many cities across the United States including San Francisco, Los Angeles, New York,

28   Seattle, and Houston. *Id.* ¶ 14.

United States District Court
Northern District of California

## I.  First Law Suit

In early 2007, Contest Promotions approached the City to discuss its business model in light of the City's restriction on certain types of signage. FAC ¶ 19. At the time, as is still the case today, the City banned the use of "off-site" signage, known as General Advertising Signs, but permitted "on-site" signage, known as Business Signs. The primary distinction between the two types of signage pertains to where they are located. Broadly speaking, a Business Sign advertises the business to which it is affixed, while a General Advertising Sign advertises for a third-party product or service which is not sold on the premises to which the sign is affixed.[1]  The paradigmatic example of an off-site (or General Advertising) sign would be a billboard.

Beginning in December of 2007, the City began citing all of Contest Promotions' signs with Notices of Violation ("NOVs"), contending that they were General Advertising Signs in violation of the Planning Code. In all, over 50 NOVs were issued, each ordering that the signage be removed under penalty of potentially thousands of dollars in fines per sign. FAC ¶ 20.

In response, on September 22, 2009, Contest Promotions filed its first lawsuit in this Court, challenging – both facially and as applied – the constitutionality of the City's ordinance prohibiting its signage. Case No. 09-cv-4434, Docket No. 1. On May 18, 2010, the Court granted in part and denied in part the City's motion to dismiss. Case No. 09-04434, Docket No. 32. In its order, the Court reasoned that Contest Promotions had adequately alleged that the "incidentally" language employed in the ordinance was unduly broad, vague, and could potentially invite unbridled discretion on the part of City officials. *Contest Promotions, LLC v. City & Cnty. of San Francisco*, No. C 09-04434 SI, 2010 WL 1998780 (N.D. Cal. May 18, 2010).  The Court denied defendant's motion as to all of Contest Promotions' First Amendment Claims, but granted with leave to amend as to its Equal Protection claim. *Id.* On February 1, 2013, the parties reached a

---

[1] In 2007, a General Advertising Sign was defined under Planning Code § 602.7 as a sign "which directs attention to a business, commodity, industry or other activity which is sold, offered or conducted elsewhere than on the premises upon which the sign is located, or to which it is affixed, and which is sold offered or conducted on such premises *only incidentally if at all*." (emphasis added). A Business Sign was defined under Planning Code § 602.3 as "[a] sign which directs attention to a business, commodity, service, industry, or other activity which is sold, offered, or conducted, *other than incidentally*, on the premises upon which such sign is located, or to which it is affixed." (emphasis added).

2

settlement. The terms of the settlement required the following actions: (1) the City would construe plaintiff's signs as Business Signs, as the Planning Code defined them at the time; (2) Contest Promotions would re-permit its entire inventory of signs to ensure compliance with the Planning Code and the settlement agreement, despite the fact that plaintiff already had previously received permits for these signs; (3) Contest Promotions would dismiss its lawsuit against the City; and (4) Contest Promotions would pay the City $375,000. FAC ¶¶ 26-29. On July 8, 2014, the City's Board of Supervisors approved the settlement and Contest Promotions made an initial payment of $150,000. *Id.* ¶ 31.

## II.      The Present Lawsuit

Soon after approving the settlement, on July 29, 2014, the Board of Supervisors passed legislation to amend the definition of Business Sign under Planning Code § 602.3. *Id.* ¶¶ 32-35. Section 602.3 now defines a Business Sign as "[a] sign which directs attention to ~~a~~ *the primary* business[2], commodity, service, industry or other activity which is sold, offered, or conducted~~,~~ ~~other than incidentally,~~ on the premises upon which such sign is located, or to which it is affixed." (amendments emphasized). When Contest Promotions submitted its signs for re-permitting pursuant to the Settlement Agreement, the City denied its applications for failure to comply with the Planning Code as amended. FAC ¶ 37-38. Plaintiff alleges that the Planning Code was amended "for the specific purpose of targeting Plaintiff and denying Plaintiff the benefit of its bargain under the Settlement Agreement and to prevent Plaintiff from both permitting new signs and obtaining permits for its existing inventory as it is required to do under the Settlement Agreement." *Id.*  ¶ 35. The City contends that the ordinance was amended to address the concerns the Court expressed in its 2010 order. Docket No. 33, Def. Mot. at 10.

On January 8, 2015, Contest Promotions filed the present action alleging a number of constitutional and state law claims. Docket No. 1. The Complaint alleged causes of action for (1)

---

[2] The section was also amended to clarify that "[t]he primary business, commodity, service, industry, or other activity on the premises shall mean the use which occupies the greatest area on the premises upon which the business sign is located, or to which it is affixed." S.F. Planning Code § 602.3.

United States District Court
Northern District of California

violation of the First Amendment, (2) denial of Due Process, (3) inverse condemnation, (4) denial of Equal Protection, (5) breach of contract, (6) breach of implied covenant of good faith and fair dealing, (7) fraud in the inducement, (8) promissory estoppel, and (9) declaratory relief. *Id.* ¶¶ 36-116. On March 13, 2015, the City filed a motion to dismiss the complaint for failure to state a claim. Docket No. 15. On April 22, 2015, the Court granted the City's motion to dismiss as to all of plaintiff's federal constitutional claims with leave to amend, and deferred ruling on its state law claims. Docket No. 25. On May 22, 2015, plaintiff filed the FAC which abandons the claim for inverse condemnation, but otherwise alleges the same causes of action as the original complaint. Docket No. 29. Now before the Court is the City's motion to dismiss the FAC for failure to state a claim.

## DISCUSSION

### I.      First Amendment

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. States and local governments are bound by this prohibition through the Fourteenth Amendment to the Constitution. *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707 (1931) ("It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action."). Although commercial speech is afforded First Amendment protections, it has a subordinate position to noncommercial forms of expression. *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430 (1993). Accordingly, it is afforded "somewhat less extensive" protection than is afforded noncommercial speech. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637 (1985); *see also In re Doser*, 412 F.3d 1056, 1063 (9th Cir. 2005).

First Amendment protections apply to commercial speech only if the speech concerns a lawful activity and is not misleading. Once it has been established that the speech is entitled to

United States District Court
Northern District of California

protection, any government restriction on that speech must satisfy a three-part test: (1) the restriction must seek to further a substantial government interest, (2) the restriction must directly advance the government's interest, and (3) the restriction must reach no further than necessary to accomplish the given objective. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-66 (1980).

Citing controlling Supreme Court and Ninth Circuit precedent, the Court explained in its prior order that Section 602.3 survives intermediate scrutiny as a ban on off-site commercial speech. *Contest Promotions, LLC v. City & Cnty. of San Francisco*, No. 15-CV-00093-SI, 2015 WL 1849525, at *4 (N.D. Cal. Apr. 22, 2015). However Contest Promotions argues that this conclusion warrants reconsideration in light of a recently decided Supreme Court case.

*Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218 (2015)[3] concerned a law which banned outdoor signs without a permit, and created 23 exemptions for specific types of signage, placing varying restrictions on the signage depending on which exemption it fell into. 135 S. Ct. 2218 (2015). For example, the law exempted "ideological signs" or "political signs" from the outright ban. Plaintiffs, a local church, challenged the law after the Town of Gilbert repeatedly cited them for failure to comply with the requirements imposed by the "Temporal Directional Signs Relating to a Qualifying Event" exemption. The exemption encompassed signs directed at motorists or other passersby, which advertised for events sponsored by a non-profit. *Id.* at 2225. The law required that these signs be "no larger than six square feet. They may be placed on private property or on a public right-of-way, but no more than four signs may be placed on a single property at any time. And, they may be displayed no more than 12 hours before the 'qualifying event' and no more than 1 hour afterward." *Id.* (internal citations omitted). These restrictions were more severe than those placed on ideological signs or political signs.

---

[3] *Reed* was decided after the City filed the motion to dismiss presently under consideration, but before plaintiff filed its opposition.

Justice Thomas, joined by five other Justices, struck down the law, finding that the exemptions were content-based, and could not withstand strict scrutiny. In arriving at this conclusion, the Court emphasized three guiding principles which compelled the result. First, a content-based restriction on speech is subject to strict scrutiny regardless of the government's motive; therefore "an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 2222. Second, "'[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Id.* at 2230 (quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y.,* 447 U.S. 530, 537 (1980)). Therefore, the mere fact that a law is viewpoint neutral does not necessarily insulate it from strict scrutiny. Third, whether a law is speaker-based or event-based makes no difference for purposes of determining whether it is content-based. *Id.* at 2231 ("A regulation that targets a sign because it conveys an idea about a specific event is no less content based than a regulation that targets a sign because it conveys some other idea."). Justice Alito, joined by Justices Sotomayor and Kennedy, took part in the majority opinion but wrote separately to "add a few words of further explanation." *Id.* at 2233 (Alito, J., concurring). Therein, Justice Alito outlined a non-exhaustive list of signage regulations that would not trigger strict scrutiny, which included, *inter alia*, "[r]ules distinguishing between on-premises and off-premises signs." *Id.* Justices Ginsburg, Breyer, and Kagan rejected the notion that a content-based regulation must necessarily trigger strict scrutiny, and concurred only in the judgment. *Id.* at 2234-39.

Contest Promotions now argues, in light of *Reed*, that Section 602.3's distinction between primary and non-primary business uses is a content-based regulation of speech subject to strict scrutiny. However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test. Furthermore, as noted above, at least six Justices continue to believe

6

that regulations that distinguish between on-site and off-site signs are not content-based, and therefore do not trigger strict scrutiny.

The distinction between primary versus non-primary activities is fundamentally concerned with the location of the sign relative to the location of the product which it advertises. Therefore unlike the law in *Reed*, Section 602.3 does not "single[] out specific subject matter [or specific speakers] for disfavored treatment." *Reed* 135 S. Ct. at 2230; *see also id.* at 2233 (Alito, J., concurring) (holding that "[r]ules regulating the locations in which signs may be placed" do not trigger strict scrutiny). Indeed, one store's non-primary use will be another store's primary use, and there is thus no danger that the challenged law will work as a "prohibition of public discussion of an entire topic." *Id.*

Because *Reed* does not abrogate prior case law holding that laws which distinguish between on-site and off-site commercial speech survive intermediate scrutiny, the Court holds that its prior analysis continues to control the fate of plaintiff's First Amendment claim. The few courts that have had occasion to address this question since *Reed* was handed down are in accord. *See California Outdoor Equity Partners v. City of Corona*, No. CV 15-03172 MMM AGRX, 2015 WL 4163346, at *10 (C.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech, let alone bans on off-site billboards. The fact that *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even *cite Central Hudson,* let alone apply it.")(emphasis in original); *Citizens for Free Speech, LLC v. Cnty. of Alameda*, No. NO. C14-02513 CRB, 2015 WL 4365439, at *13 (N.D. Cal. July 16, 2015) (holding that *Reed* does not alter the analysis for laws regulating off-site commercial speech). Accordingly, the Court **GRANTS** the City's motion to dismiss plaintiff's cause of action for violation of the First Amendment, *with prejudice*.[4]

_____

[4] Plaintiff also supports its claim for violation of the First Amendment under the theory that Section 602.3 is impermissibly vague and grants unbridled discretion to City officials. These allegations do nothing more than repeat arguments that the Court found unavailing in its previous

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.    Due Process

### A.    Substantive Due Process

In its prior order, the Court dismissed plaintiff's cause of action for violation of substantive due process, explaining that its claim was merely duplicative of other alleged constitutional violations. The Court noted:

> [P]laintiff has merely rehashed the allegations supporting its other constitutional claims—under the Equal Protection Clause, First Amendment, and Fifth Amendment—to support a claim for violation of substantive due process…"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (discussing *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

*Contest Promotions, LLC v. City & Cnty. of San Francisco*, No. 15-CV-00093-SI, 2015 WL 1849525, at *7 (N.D. Cal. Apr. 22, 2015).

Plaintiff has done nothing to remedy these defects.[5] Accordingly, the Court **GRANTS** the City's motion to dismiss plaintiff's claim for violation of substantive due process *with prejudice*.

### B.    Procedural Due Process

Contest Promotions' theory of violation of procedural due process appears to be supported by allegations that (1) the City denied its permit applications without "adequate process for appeal or review," and (2) the City failed to give Contest Promotions notice and an opportunity to be heard prior to introducing legislation to amend Section 602.3. FAC ¶ 121.

---

order, and therefore cannot serve to evade dismissal of its First Amendment challenge. *See Contest Promotions*, No. 15-CV-00093-SI, 2015 WL 1849525, at *5-6.

[5] "The Fifth Amendment does not invariably preempt a claim" for violation of substantive due process, but "[t]o the extent a property owner's complaint [constitutes a Taking] . . . the claim must be analyzed under the Fifth Amendment." *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855-56 (9th Cir. 2007). The FAC no longer alleges a cause of action under the Takings Clause; however, plaintiff's theory of constitutional harm continues to be supported by allegations that the City's actions "infringe[d] upon a constitutionally protected property interest," which would be cognizable under the Takings Clause. FAC ¶ 118.

United States District Court
Northern District of California

The first issue raised by Contest Promotions is contradicted by the language of the Planning Code which provides a process for administrative appeal and judicial review for reconsideration of NOVs or administrative penalties. S.F. Planning Code § 610(d)(1). A hearing must be scheduled within 60 days of a request for reconsideration. *Id.* The administrative law judge must issue a written decision[6] within 30 days of the hearing, and the ordinance provides a non-exhaustive list of criteria that the administrative law judge "shall" consider. *Id.* Furthermore, on November 18, 2014, the City sent plaintiff a letter responding to specific concerns it articulated about the permitting process, and requesting additional information from plaintiff. Docket No. 16, RJN Exh. F.

Next plaintiff argues that it was deprived of notice and an opportunity to be heard during the legislative enactment of Section 602.3. Plaintiff points to the fact that the amendments to Section 602.3 were originally enacted as an "interim zoning control," which obviated the need for the public hearings which are typically a part of the legislative process. Pl. Opp'n at 17. It further contends that the City did not properly comply with the procedural requirements necessary to pass an interim zoning law. However, as the City correctly notes, any harm inflicted by the interim process was mooted by the fact that Section 602.3 was subsequently amended through the normal legislative process. Plaintiff fails to explain why the four public hearings held on Section 602.3 provided an insufficient forum for it to be heard. *See* Pl. RJN Exh C. at 128-129 (listing hearings held on October 22, 2012, January 26, 2015, February 3, 2015, February 10, 2015).

In any event, the concept of procedural due process has limited vitality as applied to laws of general applicability. Justice Holmes explained long ago what is now axiomatic:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be

---

[6] The written decision must inform the plaintiff "of its right to seek judicial review pursuant to the timelines set forth in Section 1094.6 of the California Code of Civil Procedure." S.F. Planning Code § 610(d)(1)(B).

done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

Therefore, the checks inherent in a democratically elected representative government are typically all that is required to ensure compliance with procedural due process. *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) ("Procedural due process entitles citizens to a legislative body that 'performs its responsibilities in the normal manner prescribed by law.'") (internal citations omitted); *see also 75 Acres, LLC v. Miami-Dade Cnty., Fla*., 338 F.3d 1288, 1294 (11th Cir. 2003) ("if government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process."); *Aiuto v. San Francisco's Mayor's Office of Housing*, No. C 09-2093 CW, 2010 WL 1532319, at *8 (N.D. Cal. Apr. 16, 2010).

Plaintiff has therefore failed to state a claim for violation of procedural due process. Accordingly, the Court **GRANTS** the City's motion to dismiss this cause of action, *with prejudice*.

### III.    Equal Protection

Courts afford heightened review to cases in which a classification jeopardizes a fundamental right, or where the government has categorized on the basis of an inherently suspect characteristic. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Where a fundamental right is not implicated, and no suspect class is identified, a government ordinance or action is reviewed under the rational basis test. *Id*. An ordinance satisfies the rational basis test if it is "rationally related to a legitimate state interest." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). "[S]trict scrutiny under the Equal Protection Clause is inappropriate where a law regulating speech is

content-neutral, even where the speech at issue [is] non-commercial." *Maldonado v. Morales*, 556 F.3d 1037, 1048 (9th Cir. 2009). Here, the Court will apply rational basis review. *See Outdoor Media Group v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) (applying rational basis review to equal protection claim against an ordinance distinguishing between on-site and off-site speech).

Plaintiff alleges that it has been singled out by the City for disfavored treatment relative to other similarly situated signage permit-applicants – otherwise known as a "class of one" claim. FAC ¶ 131. "The Supreme Court has recognized that 'an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.''" *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). The Equal Protection Clause protects individuals constituting a class of one if the plaintiff demonstrates that there has been irrational and intentional differential treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). "A 'class of one' claim requires a showing that the government '(1) intentionally (2) treated [plaintiffs] differently than other similarly situated [businesses], (3) without a rational basis.'" *Net Connection LLC v. Cnty. of Alameda*, No. C 13-1467 SI, 2013 WL 3200640, at *4 (N.D. Cal. June 24, 2013) (quoting *Gerhart* 637 F.3d at 1022).

"We have recognized that the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction,* rather than the underlying government *action.*" *Gerhart* 637 F.3d at 1023 (citing *SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662 (9th Cir.2002)) (emphasis in original).  In *Gerhart*, the plaintiff was required to apply for a permit, and was ultimately denied a permit to build an approach to a county road; meanwhile, ten other landowners on his block were allowed to build approaches to the same road without the county even requiring a permit.

11

In its prior order in this case, the Court granted the City's motion to dismiss, noting that plaintiff had "failed to make any non-conclusory allegations tending to show that the City treated it differently than other applicants applying for signage permits." *Contest Promotions*, 2015 WL 1849525, at *9. Plaintiff has attempted to remedy this defect by amending its complaint to include a litany of similarly situated businesses which were granted permits for Business Signs.

However, upon closer inspection, these other businesses share little in common with Contest Promotions. Namely, not a single one of the stores that have allegedly received permits for Business Signs applied for signage which advertises off-premises activities – the defining feature of Contest Promotions' business model. FAC ¶¶ 92-98. "Parties allegedly treated differently in violation of the Equal Protection Clause are similarly situated only when they are 'arguably indistinguishable.'" *Erickson v. Cnty. of Nevada ex rel. Bd. of Supervisors*, No. 13-15624, 2015 WL 3541865, at *1 (9th Cir. June 8, 2015) (citing *Engquist* 553 U.S. at 601). Plaintiff has failed to plead any facts which meet this high bar. Viewed in the most generous light, plaintiff has alleged that the City may have granted permits to businesses that have failed to meet the standards set forth in Section 602.3. However, we must take care not to constitutionalize simple violations of municipal law. *See Olech*, 528 U.S. at 565 (Breyer, J., concurring). Having failed to properly allege that any similarly situated business was treated differently, plaintiff has failed to state a claim under the Equal Protection Clause. Accordingly, the Court **GRANTS** the City's motion to dismiss plaintiff's cause of action for violation of equal protection, *with prejudice*.

## IV.    State Law Causes of Action

Contest Promotions has filed its suit in a federal forum pursuant to 28 U.S.C. §1331, which provides for federal question jurisdiction. As the litigants to this action are non-diverse, §1331 is the only plausible basis for federal jurisdiction.  In addition to the federal law causes of action

discussed above, Contest Promotions has also alleged a number of causes of action based in state law, including (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) fraud in the inducement, and (4) promissory estoppel. Federal courts may take supplemental jurisdiction over such state law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Having dismissed all of Contest Promotions' federal claims from this action with prejudice, the Court hereby **DISMISSES** this action *without prejudice* so that a state court may decide the state law claims in the first instance.

## V.    Motions to Seal

With the exception of a narrow range of documents that are "traditionally kept secret," courts begin their sealing analysis with "a strong presumption in favor of access."  *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  "A stipulation, or a blanket protective order that allows a party to designate documents as sealable, will not suffice to allow the filing of documents under seal."  Civ. L.R. 79-5(a).  When applying to file documents under seal in connection with a dispositive motion, the party seeking to seal must articulate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal

13

quotations and citations omitted).   Where a party seeks to seal documents attached to a non-dispositive motion, a showing of "good cause" under Federal Rule of Civil Procedure 26(c) is sufficient.  *Id*. at 1179-80; *see also* Fed. R. Civ. P. 26(c).  In addition, all requests to file under seal must be "narrowly tailored," such that only sealable information is sought to be redacted from public access.   Civ. L.R. 79-5(b).   Because a motion to dismiss is a dispositive motion, the "compelling reasons" standard applies here.  *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737-BLF, 2015 WL 581574, at *1 (N.D. Cal. Feb. 10, 2015).

The City wishes to redact certain applications for business signs which contain architectural plans maintained by the City's Department of Building Inspection. The City relies on Section 19851 of California's Health and Safety Code which prohibits dissemination of such plans unless the party that wishes to obtain them certifies that the drawings will be "used for the maintenance, operation, and use of the building." Cal. Health & Safety Code § 19851(c)(1).

While styled as a motion to seal, the City makes no attempt to explain why public filing of the documents in question would cause harm to itself or third parties, or otherwise meet the "compelling reasons" standard. Rather, the City appears to argue that it is statutorily prohibited from publicly filing these documents. However, as the City readily admits, these plans may also be disseminated pursuant to a Court order, which the City never requested. *See* Cal. Health & Safety Code § 19851(a)(2). Accordingly, the Court **DENIES** the City's motion to seal. These documents were not considered by the Court for purposes of ruling on the City's motion to dismiss. *See* Civil Local Rule 79-5(f)(2).

**IT IS SO ORDERED.**

Dated: July 28, 2015

SUSAN ILLSTON
United States District Judge

14